**06-5324-cv**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2007

(Argued: October 1, 2007                         Decided: March 26, 2008)

Docket No. 06-5324-cv

————————

IN RE: WORLD TRADE CENTER DISASTER SITE LITIGATION

WILLIAM D. MCCUE, BARRY J. ALBRECHT, MAUREEN MCCUE, JOHN BAIANO, VINCENT MCNALLY, GINA MCNALLY, LISA DENEAU, JANET HEALY, MICHAEL SPILLER, FRANCES HICKEY, JOSEPH HEALY, LORI MALLOY, LEAH SPILLER, TIMOTHY VILLARI, MARIA VILLARI, JOHN F. TAGGART, THERESA TAGGART, WILLIAM QUINLAN, BERTHA QUINLAN, JAMES SWEENEY, KATHLEEN SWEENEY, JOAN BEYER, PETER BLAKE, SHARON BLAKE, JAMES BLAKE, JOHN M. DENEAU, GEORGE LAMOREAUX, ANGELA LAROSA, ROGER DANVERS, JAMES MASCARELLA, CLINTON BEYER, JOSEPH ARIOLA, COLLEEN ARIOLA, INGRID LAMOREAUX, THOMAS MAGEE, PATRICK MALLOY, ANTHONY R. LAROSA, JONAH BEL, KIM FLECHAUS

*Plaintiffs-Appellees*,

JOHN MONTALVO, DARLENE MONTALVO, THOMAS HICKEY, THOMAS BEATTIE, CHESTER BOTCH, JOHN NIMMO, FRANCIS PAUL PURSLEY, KENNETH ROCHE, SALVATORE SFORAZZA, CHRISTOPHER GRAYBILL, MIECZYSLAW KOSMACZEWSKI, EWA KOSMACZEWSKI, JOHN CAMPO, THOMAS BURKE, MATTHEW OSTRANDER, ANTHONY BUONAMINI, FRANK DEFILLIPO, DEIDRE DEFILLIPO, KEVIN DALY, LISA DALY, ANTONIO E. ALVEZ, MARIA E. ALVEZ, THOMAS MAGGEE, JOHN FEAL, DANIEL LUGE

*Non-Respiratory Injured*
*Plaintiffs-Appellees*,

- v. -

THE CITY OF NEW YORK AND ITS CONTRACTORS, AMEC CONSTRUCTION MANAGEMENT, INC., AMEC EARTH & ENVIRONMENTAL, INC., BECHTEL ASSOCIATES PROFESSIONAL CORPORATION, BECHTEL CONSTRUCTION, INC., BECHTEL CORPORATION, BECHTEL ENVIRONMENTAL, INC., BOVIS LEND LEASE, INC., BOVIS LEND LEASE LMD, BOVIS LEND LEASE INTERIORS, INC., BOVIS HOLDINGS LIMITED, BOVIS INTERNATIONAL, INC., EVERGREEN RECYCLING OF CORONA, PLAZA CONSTRUCTION CORP., PLAZA CONSTRUCTION MANAGEMENT CORP., TULLY CONSTRUCTION CO., INC., TULLY INDUSTRIES INC., TULLY CONSULTING CORP., TULLY CONSTRUCTION COMPANY, TURNER CONSTRUCTION COMPANY, TURNER CONSTRUCTION CO., TURNER CONSTRUCTION INTERNATIONAL, LLC, TURNER/PLAZA, A JOINT VENTURE, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY,

*Defendants-Appellants*,

JON J. MCGILLICK, ARLENE MCGILLICK, FRANCIS LAVERY, KATHRYN LAVERY, PHYLISS COSTARELLA, JOSEPH FALCONE, LENNY DINOTTE, CLIFF CARTY, KATHLEEN CARTY, JOSEPH SCARAMUZZINO, KELLY M. MILLER, LAWRENCE FORD, BLANCA GOFFREDO, FRANK GOFFREDO, BERNARD STINCHCOMB, CHRISTINE STINCHCOMB, CHRISTINE JOHNSON, ROBERT JOHNSON JR., DAVID NOLAN, LOUISE NOLAN, ROBERT PANARELLA, HERBERT PATE, DEWARDRANTH SAMAROO, DONALD CARSON, GLORIA ELAINE CARSON, ANDREA CAVICCHIO, NICOLA CAVICCHIO, JASON PORCARO, ROBERT AYERS, DEAN CURTI, JESSIE K. HORTON, LAWRENCE HORTON, KEVIN O'BRIEN, PATRICIA O'BRIEN, DIANE HOCH SANKEY, WILLIAM J. SANKEY, JERRY O'CONNOR, VICTORIA O'CONNOR, JOHN QUINN, DONALD G. THOMPSON, RENEE THOMPSON, DANIEL LEONARD, LAURA LEONARD, DELIA BECCA, LANCE BECCA, GREGORY A. FORSYTH, JOHN JACKSON, TOMIANN JACKSON, DONNA HASKELL, FRANK HASKELL, LARRIE PLACIDE, ANN MARIE DUIGAN, PATRICK DUIGAN, MICHAEL MACKO, JILL MISKANIC, JOHN MISKANIC, DAVID MCDONOUGH, WALTER JENSEN, PAUL FELLA, PETER COSGRAVE, THERESA COSGRAVE, JOANN DELGIORNO, CHRISTOPHER DELGIORNO, KEITH DECARO, KIM RYAN DECARO, DIANE DOHERTY, JAMES CHECCO, JUDY CHECCO, JEAN IMPARATO, JOSEPH IMPARATO, LANE METRO, NANCY METRO, KEVIN FARRELL, CONCETTA ZUCCARO, JOHN ZUCCARO, JAMES ALBACH, MICHAEL BELL, SHIRLEY BELL, JOHN BOYLE, CHRISTINE BROOME, ROBERT BROOME, MARYANN BUBELNIK, THOMAS J. BUBELNIK, BARRY BUSS, JEANETTE BUSS, ANTHONY DEVITA, LARANIE DEVITA, DIANE DONOVAN, KENNETH DONOVAN, ANN MARIE DUIGNAN, PATRICK DUIGNAN, DANIELLE EIVERS, JOSEPH EIVERS, GREGORY FORSYTH, ROSARIO GALLAGHER, ROBERT GARETT, CAROL GAVITT, JOSEPH GAVITT, FRANCESCA GILLAM, THOMAS GILLAM, PATRICIA HAWKINS, SCOTT HAWKINS, ANNA MARIA HUBNER, BARBARA KADNAR, JAMES A. KADNAR, DEREK KELLY, CATHERINE LANG, JAMES LANG, CAROLINE LAVIN, MICHAEL LAVIN, ALFRED LUCHETTI, MARY ELLEN LUCHETTI, FRANK MALONE, DENNIS MCCONVILLE, GAIL MCCONVILLE, JAMES MCHUGH, MARGRET MCHUGH, KENNETH MICCIO, CATHY MONGIELLO, KEVIN MONGIELLO, LAURA MORELLO, MARC MORELLO, MATHEW MULHAM, CORINNE MULHAM, CAROLYN MUNDY, THOMAS MUNDY, JOSEPH MURPHY, NANCY MURPHY, MAUREEN NOGAN, RICHARD NOGAN, JOHN QUEVEDO, CAROL RETUNDIE, VINCENT RIVERA, DONALD STRIFFLER, MARY JANE STRIFFLER, JOHN TISKA, ROBERT VAN HOUTEN, ROBIN VAN HOUTEN,

ANDREA WEISENBURGER, GREGG WEISENBURGER, MICHAEL WELSH, THERESA WELCH, JOHN J. QUINN, ATTORNEY, KENNETH J. STROHL, YAJAIRA STROHL, ARLENE MONTALVO, ROGER MONTALVO, RICHARD MIGHDOLL, COLLEEN RYAN, J. RICHARD RYAN, RICHARD RYAN, FRANK MAISANO, JULIE MAISANO, ARTHUR S. DAVIS, THERESA A. DAVIS, JO ANDRUSYCZYN, STANLEY ANDRUSYCZYN, HECTOR RIVERA, JOSEPH BELLISSIMO, CARL FISHER, JON MARIE FISHER, PATRICK DONAGHY, SUSAN ALLISON, RICHARD ALLISON, JUAN CUBERO, ROSA CUBERO, JEANNE KOLARIK, MARK BERNHEIMER, ARTHUR ALESSANDRO, JOHN DELANEY, PATRICK D'ALLIEGRO, JOHN BOTTE, CYNTHIA SHELTO, ANDERSEN ALLEN, SUE ANN ANDERSEN, CECELIA BORCHERDING, STEPHEN BORCHERDING, MARCIA DIAZ, CHARLES LA BARBERA, CATHERINE LANGERIN, PHILIP J. PFERSHING, KEVIN REYNOLDS, LISA REYNOLDS, JOSEPH CARDINALE, ROBERT INTARTAGLIA, CHRISTOPHER ROMANSKI, RAYMOND FUSCALDO, DONNA DONNELLY, STEPHEN DONNELLY, DOROTHY FORIS, GEORGE FORIS, JACQUELINE CACCHIOLI, LOUIE CACCHIOLI, TERESITA CAYATANO, PATRICIA AGUGLAIRO, ANTHONY AGUGLAIRO, ALFRED GAILLARD, ERNEST MEDAGLIA, SUSAN MEDAGLIA, LIONEL PAYETTE, MICHELLE PAYETTE,

*Plaintiffs-Appellants*,

TULLY ENVIRONMENTAL INC.,

*Debtor-Appellant.*

---

Before:

NEWMAN, SOTOMAYOR, AND WESLEY, *Circuit Judges*.

Interlocutory appeal from an order of the Southern District of New York (Hellerstein, *J.*), entered on October 18, 2006, denying Defendants' motions for judgment on the pleadings on immunity grounds under New York state law, and Defendants' motions for summary judgment on immunity grounds under federal law. Plaintiffs moved to dismiss the appeal for lack of jurisdiction under the final judgment rule. Appeal of the state defenses is dismissed, as the defenses do not fall under the collateral order doctrine. We have jurisdiction over the appeal of the federal defenses, as the Stafford Act confers immunity from suit, and affirm the district court's decision to deny Defendants' motions.

DISMISSED IN PART AND AFFIRMED IN PART.

---

JAMES E. TYRRELL, JR., Newark, NJ (Joseph E. Hopkins, James O. Copley, Jason W. Rockwell, Justin S. Strochlic, Jonathan M. Peck, Patton Boggs LLP, on the brief), *for Defendants-Appellants The City of New York and its Contractors.*

-3-

RICHARD A. WILLIAMSON, New York, NY (M. Bradford Stein, Thomas A. Egan, Flemming Zulack Williamson Zauderer LLP, New York, NY, on the brief), *for Defendant-Appellant The Port Authority of New York and New Jersey*.

KEVIN K. RUSSELL, Washington, DC (Amy Howe, Howe & Russell, P.C., Washington, DC; Paul J. Napoli, William H. Groner, Denise A. Rubin, William J. Dubanevich, Christopher R. LoPalo, W. Steven Berman, Worby Groner Edelman & Napoli Bern, LLP, East Meadow, NY, on the brief), *for Plaintiffs-Appellees*.

BRIAN J. SHOOT, New York, NY (Frank V. Floriani, Andrew J. Carboy, Susan M. Jaffe, Wendell Y. Tong, Sullivan Papain Block McGrath & Cannavo, P.C., New York, NY, on the brief), *for Plaintiffs-Appellees*.

MARION S. MISHKIN, Law Office of Marion S. Mishkin, New York, NY, *for Plaintiffs-Appellees John Montalvo and Darlene Montalvo, on behalf of the Non-Respiratory Injured Plaintiffs-Appellees*.

––––––––––

Peter G. Verniero, Philip S. White, James M. Hirschhorn, David W. Kiefer, Sills Cummis Epstein & Gross, PC, New York, NY, *for amici curiae Construction Industry, AIA New York State, Inc., et al., in support of Defendants-Appellants*.

John C. Gillespie, Parker McCay P.A., Marlton, NJ, *for amicus curiae International Municipal Lawyers Association, in support of Defendants-Appellants*.

Eric F. Leon, Lee Ann Stevenson, Andrew R. Dunlap, Kirkland & Ellis LLP, New York, NY, Patrick F. Philbin, Kirkland & Ellis LLP, Washington, DC, *for amicus curiae Verizon New York Inc., in support of Defendants-Appellants*.

Cheryl A. Harris, Harris & Miranda, LLP, New York, NY, *for amicus curiae Certain Members of the United States Congress, in support of Plaintiffs-Appellees*.

Edward J. Groarke, Stephanie Suarez, Michael D. Bosso, Colleran, O'Hara & Mills, LLP, Garden City, NY, *for amici curiae New York State AFL-CIO and Building and Construction Trades Council of Greater New York, in support of Plaintiffs-Appellees*.

Larry Cary, Cary Kane LLP, New York, NY, *for amicus curiae New York Committee for Occupational Safety and Health, in support of Plaintiffs-Appellees*.

––––––––––

WESLEY, *Circuit Judge*:

In this appeal, Defendants contend that the district court erred in denying their motions for judgment on the pleadings for immunity under New York state law, and their motions for summary judgment for immunity under federal law. We do not have jurisdiction over the state law immunity claims, as the immunity is from liability, not suit. We do have jurisdiction over the federal claims, and hold that the district court did not err in denying Defendants' motion with respect to these claims. We therefore DISMISS in part, and AFFIRM in part.

## Background

### A. Procedural History

Plaintiffs are construction workers, firefighters, policemen, and others who were present during the clean-up of the World Trade Center after the terrorist attacks of September 11, 2001. *In re World Trade Ctr. Disaster Site*, 414 F.3d 352, 358 (2d Cir. 2005); *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d 520, 557 (S.D.N.Y. 2006). Plaintiffs allege that they "were exposed to toxic fumes and gases and other hazardous conditions, and that they suffered respiratory injuries due to the failure of the City and the Port Authority to monitor those conditions and to provide them with adequate safety equipment, and/or to warn them of the hazards." *In re World Trade Ctr. Disaster Site*, 414 F.3d at 359.

Plaintiffs filed claims against the City of New York ("City"), the Port Authority of New York and New Jersey ("Port Authority"), World Trade Center Properties, and various private companies with whom the City contracted to do much of the work ("Contractor Defendants"), as

well as certain additional defendants not at issue in this appeal (collectively, the "Defendants").

Their complaint, as amended, asserts claims for negligence, wrongful death, and for violations of New York Labor and General Municipal Law. *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 542. Plaintiffs allege that the City's Department of Design and Construction ("DDC") "took control of the site, engaged contractors, and supervised the clean-up operations, but failed to provide adequately for the safety of workers engaged in the clean-up operations." *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 137 (S.D.N.Y. 2007).

The cases originated in state court, but Defendants removed the actions to federal court, asserting that the district court had exclusive jurisdiction under the Air Transportation Safety and System Stabilization Act ("ATSSSA"), 49 U.S.C. § 40101 (2006). *See In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 538. ATSSSA provides a federal cause of action for actions for damages "arising out of" the terrorist-related aircraft crashes of September 11, 2001, and vests the district courts of the Southern District of New York with "original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001." ATSSSA § 408(b)(3); *see also In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 538.

After the actions were removed to federal court, Plaintiffs filed motions to remand them to state court, which the district court denied. *In re World Trade Ctr. Disaster Site Litig.*, 270 F. Supp. 2d 357, 360-61 (S.D.N.Y. 2003). The district court determined that "claims for respiratory injury based on exposures suffered at the World Trade Center site between September 11, 2001

and September 29, 2001 'arise out of,' 'result from,' and are 'related to' the attacks of September 11, 2001," and, as a result, could only be litigated, pursuant to the ATSSSA, in the Southern District of New York. *Id.* at 361. The court also held that claims based on exposures either outside the World Trade Center site or after September 29, 2001 were not preempted by the ATSSSA and thus "remain[ed] governed by the New York Labor Law, to be applied in the New York Supreme Court as part of its traditional and historic jurisdiction over New York's labor laws, or in this court as part of its supplemental jurisdiction . . . ." *Id.* The district court, "[c]ognizant . . . of the importance of a final determination as to the scope of [its] jurisdiction under the [ATSSSA,] . . . certified the order providing for federal jurisdiction for interlocutory appeal, 28 U.S.C. § 1292(b), and stayed the remand of cases not subject to federal jurisdiction pending review by" this Court. *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 539 (citing *In re World Trade Ctr. Disaster Site Litig.*, 270 F. Supp. 2d at 381).

While the appeal of the district court's ATSSSA preemption order was pending before this Court, the parties entered into discovery, "focusing on Defendants' anticipated dispositive defense of immunity under state and federal law and with the aim of establishing a joint offer of proof, alleviating Plaintiffs of the burden of proving all factual averments." *Id*. Plaintiffs were ordered to file separate claims for each individual claimant after the district court held "that the individual issues relevant to each claimant predominated over common issues." *Id.*

In deciding the first appeal, this Court noted that, although it did not have jurisdiction over the district court's remand decision, it disagreed with the district court's remand order because "the September 29 line of demarcation was not warranted . . . ." *In re World Trade Ctr.*

*Disaster Site*, 414 F.3d at 371. We invited the district court to reconsider its decision to remand those cases alleging injuries after September 29 and/or in locations other than the World Trade Center site. *Id.* at 363, 381.

The district court then adopted this Court's reasoning, "without prejudice to future submissions as to the extent of [its] jurisdiction pursuant to the [ATSSSA]." *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 539. At a status conference in November of that year, the district court abandoned its effort to require the parties to arrive at a joint offer of proof. *Id.* The parties were instructed to complete discovery and file their motions regarding Defendants' affirmative defenses of state and federal statutory and common law immunity. *Id.* The parties complied. The district court's resolution of these motions forms the basis of this appeal.

The district court determined that the ATSSSA did not preempt "otherwise available" state or federal law immunity defenses. *Id.* at 545-46. The district court then considered the state and federal immunity claims. In a motion for judgment on the pleadings, Defendants asserted immunity under the New York State Defense Emergency Act (the "SDEA"), the New York State and Local Natural Disaster and Man-Made Disaster Preparedness Law ("Disaster Act"), and New York common law.[1] *Id.* at 546. Defendants also moved for summary judgment on the federal defenses. *Id.* at 559.

---

[1]The Port Authority moved, in the alternative, for summary judgment on the SDEA claims, and did not claim entitlement to immunity under the Disaster Act. The district court also considered other motions that are not at issue in this appeal.

### 1.    State Immunity Defenses

#### a.    SDEA

The district court determined that Defendants were not entitled to judgment on their claim for immunity under the SDEA, N.Y. Unconsol. Law § 9102-a.[2]  *Id.* at 547-56.  The district court determined that, to be immune under the SDEA, Defendants had to show that they were engaged in civil defense activities, and that those activities were undertaken in good faith "during the rush of emergency."  *Id.* at 550-52 (quoting *Fitzgibbon v. County of Nassau*, 541 N.Y.S.2d 845, 849 (N.Y. App. Div. 2d Dep't 1989) and citing N.Y. Unconsol. Law §§ 9193(1); 9103(5)).  The district court held that it could not, on the record before it, resolve these fact-sensitive issues.  *Id.* at 554-56.

#### b.    Disaster Act

The district court held that immunity under the Disaster Act was no broader than under the SDEA and required a similarly fact-intensive inquiry; it denied Defendants' motion for immunity under the Disaster Act, N.Y. Exec. Law §§ 20-29-g.[3]  *Id.* at 558.

#### c.    New York Common Law

---

[2]The SDEA provides a grant of immunity for actions taken "in good faith carrying out, complying with or attempting to comply with any law, any rule, regulation or order duly promulgated or issued pursuant to [the SDEA]" and "relating to civil defense."  N.Y. Unconsol. Law § 9193(1).

[3]The Disaster Act provides immunity for political subdivisions "for any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of any officer or employee in carrying out the provisions of this section."  N.Y. Exec. Law § 25(5).

As with the SDEA and Disaster Act claims, the district court determined that it could not decide as a matter of law whether the City, the Port Authority, and Consolidated Edison were entitled to state common law immunity.[4] *Id.* at 558-59.

### 2. Federal Immunity Defenses

#### a. Federal Common Law Immunity

Defendants argued that they were entitled to immunity for actions taken in the aftermath of September 11 to the extent that the Army Corps of Engineers ("Army Corps"), the Occupational Safety and Health Administration ("OSHA"), and the Environmental Protection Agency ("EPA") controlled and directed those actions. *Id.* at 560. The district court rejected Defendants' claims that the federal agencies' assumption of responsibility in developing the protocols for health and safety, without more, extended immunity to Defendants. *Id.* at 565. However, if Defendants could show that they relied upon the agencies and adopted the federal standards, their conduct would be "tantamount to actions by the federal authority" and they would be entitled to derivative immunity. *Id.* at 566. Because the court could not, on the record before it, "demark the boundary between federally instructed discretionary decisions, and those made by the various Defendants," it declined to extend derivative immunity to Defendants. *Id.*

#### b. Stafford Act

---

[4]The court noted that if government immunity was later applied to the acts at issue, it would then decide if the Contractor Defendants and Consolidated Edison would be entitled to such immunity. *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 559 n.21. However, the district court granted Consolidated Edison's motion to dismiss the complaint against it on alternate grounds, *see id.* at 574, and Plaintiffs do not appeal that dismissal.

-10-

The district court also denied Defendants' motion for summary judgment. It determined that section 305 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (the "Stafford Act") did not grant immunity to non-federal actors, or that if the Stafford Act did grant some form of immunity, this immunity was no broader than federal common law immunity. *Id.* at 566-67. In a later decision construing this order, the district court clarified that it intended to hold "that the Stafford Act did not apply to non-federal actors and therefore did not apply to Defendants in this case," and that it also denied Defendants derivative Stafford Act immunity. *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d at 138, 144.

### c. Other Bases for Federal Immunity

The district court rejected the argument of the Port Authority and World Trade Center Defendants that the federal government's promise to pay all of the costs associated with the rescue and recovery efforts at the World Trade Center made the government the real party in interest and therefore supported a derivative federal sovereign immunity defense. *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 567. The court held that while Defendants might ultimately seek indemnification from the federal government, the promise of payment did not suspend the ordinary rules governing the rights and obligations between tortfeasor and victim, and indemnification did not mean Defendants were entitled to immunity. *Id.*

### B. Motion to Certify Appeal; Other Proceedings in District Court

After the district court decided Defendants' motions on their immunity defenses, Defendants moved for certification for interlocutory review and then filed a notice of appeal as of

right one day later. *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d at 137. The district court provisionally denied the motion for interlocutory appeal and rejected Defendants' claim that the notice of appeal divested it of jurisdiction. *Id.* In an opinion dated January 8, 2007, the court again held that the notice of appeal was legally ineffective to divest the district court of its jurisdiction, and denied the motion to certify its prior order for interlocutory review. *Id.* at 145. The court held that Defendants' appeal did not fall under the collateral order doctrine because it was based on an "unclear and disputed" factual record "and a novel and expanded exception to the rule of finality." *Id.* at 140.

Noting that 28 U.S.C. § 1292(b) provided for only "*limited* interlocutory appeals," the court exercised its discretion to deny Defendants' motion for an interlocutory appeal, finding that an interlocutory appeal would not "materially advance the ultimate termination of the litigation," as required by 28 U.S.C. § 1292(b). *Id.* at 144-45. The delay occasioned by such an appeal would, the district court opined, "be unconscionable, given the intense public interest in reaching an expeditious resolution to this litigation." *Id.* at 145.

**C.     The Instant Appeal**

On November 16, 2006, Defendants appealed to this Court the district court's denial of the following motions: (1) the City's motion for judgment on the pleadings based on state statutory and common law immunity; (2) the Port Authority's motion to dismiss and/or for summary judgment pursuant to the SDEA; (3) the City's motion for summary judgment based on federal immunity; (4) the Port Authority's motion for summary judgment dismissing with prejudice Plaintiffs' actions and all cross-claims against the Port Authority and the World Trade

-12-

Center Defendants on the ground of federal immunity; and (5) the Port Authority's motion for judgment on the pleadings based upon state common law immunity.

Citing *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985), which held that immunity from suit is "effectively lost if a case is erroneously permitted to go to trial," a panel of this Court granted Defendants' January 17, 2007 motion to divest the district court of jurisdiction by immediately staying all further proceedings before Judge Hellerstein. The panel found it "at least arguable whether some or all of the assertions of immunity put forward by appellants-petitioners have merit."

Plaintiffs then moved to dismiss the appeal for lack of appellate jurisdiction under 28 U.S.C. § 1291, and moved to vacate the stay of the district court proceedings. After oral argument, this Court granted Plaintiffs' motion to vacate the stay of the district court proceedings, and restored the district court's jurisdiction for pretrial proceedings and trial while retaining appellate jurisdiction for this panel to decide Defendants' interlocutory appeal. *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 171 (2d Cir. 2007).

We conclude that the New York defenses are just that: defenses to liability, rather than immunity from suit, and thus not subject to interlocutory appeal. We therefore dismiss that portion of the appeal. We do, however, have jurisdiction to decide the derivative Stafford Act immunity claim. Because we conclude that the district court did not err in denying Defendants' motion for summary judgment on that issue, we affirm. We also, however, note that the district court erred in determining that Defendants were, as a matter of law, not entitled to derivative

Stafford Act immunity.

**Discussion**[5]

**A.      The Final Judgment Rule**

Plaintiffs argue that the appeal should be dismissed because the district court's denial of Defendants' motions is non-final, as the immunities sought do not fall within the "narrow class of decisions" subject to interlocutory review under the collateral order doctrine. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994). They contend that Defendants' defenses provide only affirmative defenses to liability, are "thoroughly enmeshed with the merits of the case," and were not finally decided by the district court because that court determined that "factual disputes precluded resolving the defenses at this stage in the case."[6] As a result, Plaintiffs conclude that we lack jurisdiction over the appeal.

**1.      The Collateral Order Doctrine**

---

[5]We review de novo the district court's decision on Defendants' motion for judgment on the pleadings on the state law immunity defenses. *See, e.g.*, *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 89 (2d Cir. 2006), *aff'd sub nom. Warner-Lambert Co., LLC v. Kent*, 238 S.Ct. 1168 (Mar. 3, 2008); *King v. Am. Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002). "In deciding a Rule 12(c) motion, we . . . accept[] the allegations contained in the complaint as true and draw[] all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).
Review of the district court's decision on the summary judgment motions for the federal immunity defenses is likewise de novo, and we view the record in the light most favorable to the non-moving party. *Treglia v. Town of Manlius*, 313 F.3d 713, 718 (2d Cir. 2002).

[6] Plaintiffs also contend that the district court's ruling on the federal defenses is nonfinal because these defenses were invoked only to limit the scope of conduct Plaintiffs could introduce to prove their claims. As Defendants point out, however, granting these motions could lead to the dismissal of certain individual Plaintiffs' claims.

Our jurisdiction is generally limited to appeals from "final decisions of the district courts." 28 U.S.C. § 1291. A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). "[I]nterlocutory appeals – appeals before the end of district court proceedings – are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995). The Supreme Court read into section 1291 Congress's "express[ion of] a preference that some erroneous trial court rulings go uncorrected until the appeal of a final judgment, rather than having litigation punctuated by 'piecemeal appellate review of trial court decisions which do not terminate the litigation.'" *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430 (1985) (quoting *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982)).

The Supreme Court has "recognized a 'small class' of decisions that are immediately appealable under § 1291 even though the decision has not terminated the proceedings in the district court." *Van Cauwenberghe*, 486 U.S. at 522. This rule, known as the "collateral order" doctrine, was first articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949). The collateral order doctrine is a "practical construction" of the final judgment rule, which permits an appellate court to hear an appeal of a decision that would "conclusively resolv[e] 'claims of right separable from, and collateral to, rights asserted in the action.'" *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)).

For a court of appeals to have jurisdiction under the collateral order doctrine, the order appealed must (1) "be effectively unreviewable on appeal from a final judgment"; (2)

-15-

"conclusively determine the disputed question"; and (3) "resolve an important issue completely separate from the merits of the action." *United States v. Aliotta*, 199 F.3d 78, 82 (2d Cir. 1999) (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989)). The scope of the collateral order doctrine is "modest." *Will*, 546 U.S. at 350. The claims permitted in such an appeal are those that are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen*, 337 U.S. at 546; *see also Will*, 546 U.S. at 349.

### a. The Requirement of Effective Unreviewability on Appeal from Final Judgment

Parties seeking to establish collateral order jurisdiction commonly seek to satisfy the *Cohen* requirement that a claim be effectively unreviewable on appeal from a final judgment by asserting that they have a "right not to stand trial" or an "immunity from suit," because both are "effectively lost if a case is erroneously permitted to go to trial." *See Mitchell*, 472 U.S. at 525-26. The Supreme Court has made it clear that "§ 1291 requires courts of appeals to view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye," *Digital Equip.*, 511 U.S. at 873, for "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial,'" *id.*; *see also Will*, 546 U.S. at 351. "[O]nly explicit statutory and constitutional immunities" from suit may be immediately appealed. *Digital Equip.*, 511 U.S. at 875. An appellate court must make "a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." *Id.* at 878-79; *see also Will*, 546 U.S. at 351-52.

In *Will*, the Court explained why it had permitted collateral appeal in only a few

-16-

exceptional categories of cases. *Id.* at 350-52. Each category recognized "some particular value of a high order" that supported "the interest in avoiding trial: honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual." *Id.* at 352. As the *Will* Court made clear, "it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Id.* at 353 (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)).

In *Mitchell* for example, a denial of a qualified immunity defense was immediately appealable due to the "threatened disruption of governmental functions, and fear of inhibiting able people from exercising discretion in public service if a full trial were threatened whenever they acted reasonably in the face of law that is not 'clearly established.'" *Id.* at 352 (citing *Mitchell*, 472 U.S. at 526). The government employee's "distraction . . . from . . . dut[y]" occasioned by defending a lawsuit is a sufficiently important factor to warrant immediate appeal. *Mitchell*, 472 U.S. at 526 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)). However, the costs associated with unnecessary litigation are insufficiently important to warrant the immediate appeal of a pretrial order. *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 499 (1989).

**b.** **The Requirement that the Order Conclusively Determine the Disputed Question and Resolve an Important Issue Completely Separate from the Merits**

The collateral order doctrine contains two additional criteria: the order "must conclusively determine the disputed question and that question must involve a claim of right

-17-

separable from, and collateral to, rights asserted in the action." *Mitchell*, 472 U.S. at 527 (internal alterations, citations, and quotation marks omitted). A district court's determination that, on the facts as alleged by the plaintiff, the defendant is not immune conclusively determines the defendant's right to "immunity from suit," regardless of whether the plaintiff ultimately proves its factual allegations, because the defendant loses its asserted right not to stand trial. *See id.* "[T]he *Cohen* 'separability' component asks whether the question to be resolved on appeal is 'conceptually distinct from the merits of the plaintiff's claim.'" *Behrens*, 516 U.S. at 309 n.3 (quoting *Mitchell*, 472 U.S. at 527). Generally, "a question of immunity is separate from the merits of the underlying action for purposes of the *Cohen* test even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue." *Mitchell*, 472 U.S. at 528-29.

Both of these requirements are the basis for the rule that a district court's denial of immunity from suit is an appealable collateral order under 28 U.S.C. § 1291 only "to the extent that it turns on an issue of law." *Id.* at 530. "[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson*, 515 U.S. at 319-20.

Nevertheless, if a lower court determines that there is a dispute regarding material issues of fact that precludes summary judgment on a qualified immunity defense, an appellate court "may still exercise interlocutory jurisdiction if the defendant . . . contends that he is entitled to qualified immunity even under plaintiff's version of the facts." *Coons v. Casabella*, 284 F.3d

437, 440 (2d Cir. 2002) (quoting *Tierney v. Davidson*, 133 F.3d 189, 194 (2d Cir. 1998)) (alteration in original); *see also Behrens*, 516 U.S. at 313. So long as the defendant asserts "an immunity defense on stipulated facts, facts accepted for purposes of the appeal, or the plaintiff's version of the facts that the district judge deemed available for jury resolution," we have jurisdiction. *Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir. 1996); *see also O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 38 (2d Cir. 2003).[7]

**B.      State Law Defenses**

The plain language of the SDEA and Disaster Act suggests only a defense to liability. Defendants contend that reliance on the language of the statutes "elevates form over substance." They point out that the New York legislature would have anticipated that the denial of the SDEA and Disaster Act defenses would be immediately appealable as New York law provides an automatic right of interlocutory appeal. N.Y. C.P.L.R. § 5701. As a result, Defendants take the view that regardless of the language employed in the statute, New York's appellate procedures in effect result in immunity from suit for New York public actors. They also contend as a policy matter that the SDEA and Disaster Act confer an immunity from suit for discretionary functions to allow responders to a disaster to react to catastrophes without "fear of later second-guessing by the courts." Plaintiffs focus on the statutory language and also contend that the defenses provided by both the SDEA and the Disaster Act are inherently fact-specific and thus generally incapable

---

[7]It should come as no surprise that the jurisdictional analysis of interlocutory appeals of immunity from suit mimics the law of summary judgment, for it is only when the entitlement to immunity from suit is solely a matter of law that a circuit court will have jurisdiction to review that decision.

of resolution before a trial.

### 1. Factors to Determine Whether the State Immunities are from Liability or from Suit

State substantive law governs the scope of immunity for state law claims, and "federal law determines the appealability of the district court's order." *Napolitano v. Flynn*, 949 F.2d 617, 621 (2d Cir. 1991) (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988)). To determine the nature of the rights conferred by a grant of immunity, a court must consider whether, under the law of the sovereign that provides the immunity, those immunities are intended to be from suit, or just from liability. *Id.* Under federal law, as explained above, only immunities from suit are "effectively unreviewable" on final appeal. *Will*, 546 U.S. at 353. Essentially, federal law decides the categories of appealable orders; state law determines if a state law claim, or defense, falls within one of the categories.

In *Napolitano*, government officials appealed a district court's denial of a Vermont state law qualified immunity defense. 949 F.2d at 621. We noted that if the claims had been brought under federal law, *Mitchell* would provide the analytical blueprint to resolve the jurisdictional inquiry. *Id.* We reasoned that if "Vermont law, like federal law, holds that qualified immunity is an immunity from suit rather than simply a defense to substantive liability," then federal law would permit the appeal. *Id.* As "Vermont law unequivocally follows *Mitchell*'s reasoning that qualified immunity is an immunity from suit," we had jurisdiction under the collateral order doctrine. *Id.* (citing *Murray v. White*, 587 A.2d 975, 978 (Vt. 1991)).

Defendants press that New York's liberal policy of allowing interlocutory appeals requires us to conclude that they are entitled to immediate appeal. In *Napolitano*, we considered

-20-

whether Vermont would allow an immediate appeal of the denial of qualified immunity. *Id.* But *Napolitano* was an easy case – Vermont law had expressly adopted the reasoning of *Mitchell*, and Vermont had long had a judge-made collateral order rule that adopted the federal rule laid out in *Cohen*. *Id. Napolitano* noted the obvious: where a state employs a final judgment rule akin to that in the federal system, our effort to discern the scope of a state defense may, in some cases, be informed by state courts' application of the state's final judgment rule to the defense. If state and federal appellate procedures are congruent, the application of the state procedures to a state defense may shed some light on the federal appellate jurisdiction question.

New York appellate procedures, however, reflect policy choices quite different from the limited collateral appeals permitted in federal court. New York freely allows interlocutory appeals to the Appellate Division.[8] N.Y. C.P.L.R. § 5701(a)(1). In New York courts, avoidance of *any* trial, not only "a trial that would imperil a substantial public interest," *Will*, 546 U.S. at 353, warrants immediate appeal, N.Y. C.P.L.R. § 5701(a)(1). Defendants would be permitted to appeal to the Appellate Division the denial of the subject defenses – along with the denial of all other motions, some of which would clearly not fall under the federal collateral order doctrine. Because the Appellate Division's jurisdiction is not premised on a conclusion that a certain defense provides immunity from suit, New York's liberal policy of appealability to the Appellate

---

[8]New York is among a minority of states that do not apply the traditional final judgment requirement, as it permits interlocutory appeals to the Appellate Division as of right. 4 Am. Jur. 2d Appellate Review § 85.

Division is of limited use to our analysis.[9]

We therefore caution against placing too much emphasis on state appellate procedures, particularly when the state substantive law question can be easily answered from the clear language of a statute or state court decision. The finality of an order under the collateral order rule is a function of the substance of the right denied – if the right will be irrevocably lost without an immediate appeal, federal courts have jurisdiction to ensure its vindication by permitting appeal under the collateral order doctrine.[10]

In our view, to determine whether these New York state defenses provide immunity from suit or only immunity from liability, we need only consider the statutory language, if any, of each defense, and the cases construing the defense. Having done so, we conclude that evidence is compelling that New York has conferred immunity from liability and not from suit with regard to the defenses asserted. Given the clear indication that, as a substantive matter, the New York Court of Appeals views these immunities as only defenses to liability, we conclude that New

[9]New York law does not provide such a broad appeal as of right at every stage of the appellate process; the rules for an appeal as of right to the New York Court of Appeals are more restrictive than for appeals to the Appellate Division. *See* N.Y. C.P.L.R. § 5601 (2007).

[10]However, it may still be the case that in some instances the appealability of a denial of a state immunity defense in state court will shed some light on the substance of that defense when a court of appeals has no other reliable indicators of the nature of the state immunity defense. We agree with the Fifth Circuit's observation that a state's "procedural rules are relevant only for what they reveal about the state's view on the substantive issue of whether [a certain] immunity is an immunity from suit or merely a defense to liability." *Sorey v. Kellett*, 849 F.2d 960, 962 (5th Cir. 1988)*. But see Brown v. Grabowski*, 922 F.2d 1097, 1109 (3d Cir. 1990) (considering fact that "defendants could obtain appeal only by means of an interlocutory order and a motion for leave to appeal," and that "the power to grant leave to appeal interlocutory orders is 'highly discretionary' and 'exercised only sparingly' by New Jersey's appellate courts" to conclude that state law qualified immunity was not subject to collateral appeal) (internal quotations omitted).

-22-

York appellate procedures are entitled to little, if any, weight.[11]

### a. Applying the Factors to this Appeal

The SDEA provides, in relevant part:

> The state, any political subdivision, municipal or volunteer agency, . . . or any individual, partnership, corporation, association, trustee, receiver or any of the agents thereof, in good faith carrying out, complying with or attempting to comply with any law, any rule, regulation or order duly promulgated or issued pursuant to this act, any federal law, . . . relating to civil defense, including but not limited to activities pursuant thereto . . . following attack . . . *shall not be liable* for any injury or death to persons or damage to property as the result thereof.

N.Y. Unconsol. Law § 9193(1) (emphasis added).

The Disaster Act[12] contains a similar grant of immunity: "A political subdivision *shall not be liable* for any claim based upon the exercise or performance or the failure to exercise or

---

[11]Defendants argued during oral argument that we should consider certifying to the New York Court of Appeals the question of whether the state defenses were immunities from suit or just liability. We decline to do so. While this Court and the New York Court of Appeals have enjoyed a vigorous and productive certification relationship, there is no need for certification here. That court's decision in *Brown v. State*, 89 N.Y.2d 172 (1996), provides sufficient guidance for us to determine the nature of these immunities. *See DiBella v. Hopkins*, 403 F.3d 102, 111-12 (2d Cir. 2005) ("[I]n light of existing authority from New York and elsewhere on this matter, we must undertake the imprecise but necessary task of predicting on a reasonable basis how the New York Court of Appeals would rule if squarely confronted with this issue."). Moreover, certain prudential considerations weigh against certification in this case, namely the delay in resolution of Plaintiffs' claims that would result and the infrequency with which this issue is likely to recur in our Court.

[12]The Disaster Act authorizes and orders "the chief executive of any political subdivision" "[u]pon the threat or occurrence of a disaster, . . . to . . . use any and all facilities, equipment, supplies, personnel and other resources of his political subdivision in such manner as may be necessary or appropriate to cope with the disaster or any emergency resulting therefrom." N.Y. Exec. Law § 25(1).

perform a discretionary function or duty on the part of any officer or employee in carrying out the provisions of this section." N.Y. Exec. Law § 25(5) (emphasis added). The plain language of the SDEA and Disaster Act therefore suggest that the legislature intended to confer only immunity from liability.[13]

The Court of Claims Act employs different language. There, the legislature provided that New York "waives its immunity from *liability and action* and . . . assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations . . . ."[14] N.Y. Court of Claims Act § 8 (emphasis added). Furthermore, in the years before and after the 1978 enactment of the Disaster Act, the legislature explicitly extended immunity "from liability and action" on a number of occasions.[15] If the legislature intended the SDEA and Disaster Act to provide more than a

---

[13]"The legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense . . . ." N.Y. Statutes § 94.

[14]Notably, a prior version of the statute waived only immunity from action; in *Smith*, the New York Court of Appeals held that "although the State had waived its immunity from suit, it had not waived its immunity from liability . . . ." *Brown,* 89 N.Y.2d at 180; *Smith v. State*, 227 N.Y. 405, 409-10 (1920) ("Immunity from an action is one thing. Immunity from liability for the torts of its officers and agents is another."). Following the *Smith* decision, the legislature amended the Court of Claims Act by adding a waiver of immunity from "liability and action." N.Y. Court of Claims Act § 8.

[15]*See* N.Y. Nav. Law § 176(2)(b) (1977) ("[T]he state shall be immune from *liability and action* with respect to any act or omission done in the discharge of the department's responsibility pursuant to this article . . . .") (emphasis added); N.Y. Envtl. Conserv. Law § 27-1313(1)(c) (1979) ("[T]he state shall be immune from *liability and action* with respect to any act or omission done in the discharge of the department's aforesaid responsibility pursuant to this section . . . .") (emphasis added); N.Y. Pub. Health Law § 1389-b(1)(b) (1979) ("[T]he state shall be immune from *liability and action* with respect to any act or omission done in the discharge of

defense to liability, it would have used language providing for immunity "from liability and action."

This conclusion is borne out by various important policy considerations. New York policy is "to reduce rather than increase the obstacles to the recovery of damages for negligently caused injury or death, whether the defendant be a private person . . . or a public body." *Abbott v. Page Airways*, 23 N.Y.2d 502, 507 (1969) (citations omitted). Moreover, "[l]egislative grants of privilege are to be liberally interpreted in favor of the public, and strictly interpreted against the grantee; and statutes in derogation of sovereignty are strictly construed." N.Y. Statutes § 291. Thus, where the New York legislature has quite deliberately provided only for immunity from liability, expanding that immunity also to suits would contravene New York policy. We may not "import immunity back into a statute designed to limit it." *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955).

Thus, the willingness of the legislature to explicitly confer immunity from *liability and action* in other statutes counsels against reading the SDEA and Disaster Act more broadly here. Likewise, the New York legislature's extension of immunity from liability and action to certain

the department's responsibility pursuant to this title . . . .") (emphasis added); N.Y. Envtl. Conserv. Law § 27-0916(4) (added 1981) ("Section eight of the court of claims act . . . notwithstanding, the state shall be immune from *liability and action* with respect to any act or omission done in the exercise of the department's authority pursuant to this section . . . .") (emphasis added); N.Y. Envtl. Conserv. Law § 71-2723(6)(c) (amended 1987 to provide that "section eight of the court of claims act . . . notwithstanding, the state shall be immune from *liability and action* with respect to any act or omission done in the exercise of the department's authority as so conferred by the court") (emphasis added); *see also* N.Y. Exec. Law § 259-mm Art.VI(d) (certain officers "shall be immune from *suit and liability*, either personally or in their official capacity, for any claim for damage . . . ." (emphasis added)).

entities in certain circumstances, *see supra* n.15, suggests that New York common law discretionary function immunity does not provide immunity from suit.

Construing the current version of the Court of Claims Act's immunity waiver, the Court of Appeals has noted that

> [t]he immunity waived by section 8 of the Act is the historic immunity derived from the State's status as a sovereign and protects the State from suit. The defenses the dissent refers to are based on the special status of the defendant as a governmental entity. The State is amenable to suit but may nevertheless assert these grounds to avoid paying damages for some tortious conduct because, as a matter of policy, the courts have foreclosed liability. . . . [I]n each of [the cases cited by the dissent,] the Court entertained jurisdiction and decided the matter on the basis of the defense asserted.

*Brown*, 89 N.Y.2d at 192-93 (citations omitted).[16]

The New York Court of Appeals has decided only one case involving the SDEA's immunity provision, *see Abbott*, 23 N.Y.2d at 507, and has not construed the Disaster Act's immunity provision. In *Abbott*, the director of the county civil defense office chartered a helicopter to observe the "street rioting [that] erupted in Rochester in . . . 1964." *Id.* at 506. The helicopter crashed, killing the pilot, the director, and two people on the ground. *Id.* The

---

[16]Defendants characterize this portion of the opinion as dicta offered merely to respond to points made by the dissent. They may be right. Nonetheless, we think it appropriate to rely on one of the very few New York Court of Appeals opinions discussing the distinction in New York law between immunities from suit and immunities from liability. As Justice Cardozo remarked, "In controversies so purely local, little gain is to be derived from drawing nice distinctions between dicta and decisions. Disagreement with either, even though permissible, is at best a last resort, to be embraced with caution and reluctance." *Hawks v. Hamill*, 288 U.S. 52, 60 (1933).

-26-

defendant owner of the helicopter asserted immunity from suit under the SDEA. *Id.* at 506-07.

Affirming the jury's verdict for the plaintiffs, the Court of Appeals observed that "the policy of this State has been to reduce rather than increase the obstacles to the recovery of damages for negligently caused injury or death, whether the defendant be a private person . . . or a public body." *Id.* at 507 (citations omitted). The court also noted that, under New York law, "[l]iability is the rule, immunity the exception . . . . The rule of non-liability is out of tune with life about us, at variance with modern-day needs and with concepts of justice and fair dealing."[17] *Id.* at 507 n.2 (quoting *Bing v. Thunig*, 2 N.Y.2d 656, 666-67 (1957)) (alterations in original).

The Court of Appeals' *Abbott* decision thus suggests that the state defenses Defendants invoke do not provide immunity from suit. And if they are only defenses to liability, it is clear this Court must dismiss the appeal, as a ruling on these defenses is not cognizable under the collateral order doctrine. We find support for this position in *Brown*'s broad construction of the state's waiver of immunity from liability and action. *Brown*, 89 N.Y.2d at 192; *see* N.Y. Court of Claims Act § 8. There, the Court of Appeals held that "legal defenses which the State may interpose to avoid liability," including the "discretionary actions" defense, while "sometimes referred to loosely as 'immunities', should not be confused with sovereign immunity." *Brown*, 89 N.Y.2d at 192. The cases Defendants enlist predate *Brown*'s clear statement that "[t]he State is amenable to suit but may nevertheless assert these grounds to avoid paying damages for some

---

[17]While Defendants argue that the riots in *Abbott* cannot be compared to the devastation wrought by the September 11 attacks, the scope of immunity conferred by the statute is not a function of the severity of the disaster, as "[a]ppeal rights cannot depend on the facts of a particular case." *Carroll v. United States*, 354 U.S. 394, 405 (1957).

tortious conduct because, as a matter of policy, the courts have foreclosed liability." *Id.*

The plain language of the SDEA and the Disaster Act, as well as New York Court of Appeals case law drawn from analogous contexts, support our view that the New York legislature has made a deliberate decision to limit the immunity available under the SDEA and the Disaster Act to immunity from liability. *Brown* and New York's policy regarding immunities under state law make clear that common law discretionary function immunity is, likewise, only immunity from liability.

### 2. The Port Authority's State Sovereign Immunity Argument

Finally, the Port Authority contends that it is entitled to "sovereign immunity" because it was engaged in uniquely governmental activities that were "completely sovereign in nature and completely foreign to any activity which could be carried on by a private person." *Williams v. State*, 456 N.Y.S.2d 491, 493 (N.Y. App. Div. 3d Dep't 1982).

The Port Authority is a "government-operated body which is responsible for developing public transportation within the statutorily determined Port District." *Japan Airlines Co. v. Port Auth. of N.Y. & N.J.*, 178 F.3d 103, 107 (2d Cir. 1999). It is also the owner of the 16-acre World Trade Center site. The States of New York and New Jersey enacted a broad waiver of sovereign immunity for the Port Authority. *See* N.Y. Unconsol. Law § 7101 ("[T]he states of New York and New Jersey consent to suits, actions or proceedings of any form or nature at law, in equity or otherwise . . . against the Port of New York Authority."); *see also* N.J. Stat. Ann. §§ 32:1-162; *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990) (citing section 7101 for the

conclusion that "New York and New Jersey have expressly consented to suit in expansive terms"). They also enacted a more specific consent to suit for tortious acts by the Port Authority or its agents. *See* N.Y. Unconsol. Law § 7106 ("Although the port authority is engaged in the performance of governmental functions, the said two states consent to liability on the part of the port authority in such suits, actions or proceedings for tortious acts committed by it and its agents to the same extent as though it were a private corporation."). Because "New York and New Jersey have expressly consented to suit in expansive terms," *Feeney*, 495 U.S. at 306, the Port Authority "is not entitled to Eleventh Amendment immunity from suit," *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 39 (1994).

Whether the Port Authority might still be entitled to discretionary governmental function immunity in certain circumstances, despite these broad enactments subjecting it to suit, appears to be unresolved. Some courts have simply held that the Port Authority is not immune for governmental functions – whether discretionary or not – because section 7106 contains no limiting language to suggest that it preserved any residual sovereign immunity. *See, e.g.*, *Rittenhouse v. A. Star Container Serv.*, No. 86 CIV 5876, 1988 WL 112898, at *2 (S.D.N.Y. Oct. 17, 1988) ("[Section 7106] makes it clear that the Port Authority does not enjoy immunity for tortious acts committed while performing governmental functions."); *In re World Trade Ctr. Bombing Litig.*, 776 N.Y.S.2d 713, 728 (N.Y. Sup. Ct. 2004) ("These claims fall within the broad coverage of the statute, are not specifically excluded, and therefore are authorized under the terms of those sections."). In another case, without ruling out that the Port Authority *could* be entitled to governmental immunity, this Court declined to extend such immunity by finding

that the alleged claims involved a "proprietary function," in contrast to a discretionary governmental function, and that there was a "special relationship" between the plaintiffs and Port Authority. *See Japan Airlines*, 178 F.3d at 111.[18]

Regardless of whether the Port Authority could convince a jury, or this Court on appeal after a final judgment, that its actions fall on the government side of the "governmental versus proprietary [function] continuum," *Sebastian v. State*, 93 N.Y.2d 790, 796 (1999), *Brown* makes it clear that any residual discretionary function governmental immunity is merely a defense to liability, rather than an immunity from suit. *See Brown*, 89 N.Y.2d at 192 (citing, e.g., *Miller v. State*, 62 N.Y.2d 506, 510 (1984) ("[A] governmental entity's conduct may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions." *Id.* at 511-12.)). For these reasons, we conclude that the Port Authority's asserted state law immunity is not immunity from suit, and it therefore does not permit collateral order appeal.[19]

---------

While we do not doubt that Defendants may well "face the prospect of thousands of lawsuits and years of litigation," we return to the New York Court of Appeals' decision in

[18]*Japan Airlines* explained: "To the extent New York case law immunizes governmental bodies from tort liability for acts of executive discretion, that same case law does not extend such immunity to proprietary functions . . . ." 178 F.3d at 111.

[19]Because we conclude that it is not entitled to immunity in any event, we do not reach the Port Authority's claim that the district court improperly reviewed its motion for immunity under the SDEA as a Rule 12(c) motion to dismiss, rather than a motion for summary judgment under Rule 56. *See Digital Equip.*, 511 U.S. at 877 n.6.

*Brown*: "When the law immunizes official violations of substantive rules because the cost or bother of doing otherwise is too great, thereby leaving victims without any realistic remedy, the integrity of the rules and their underlying public values are called into serious question." 89 N.Y.2d at 196. New York disfavors immunities from suit; we must abide by its policy choices. Those choices are clear with respect to the SDEA, Disaster Act, and New York common law: they provide only a defense to liability. As these defenses are not "effectively unreviewable on appeal from a final judgment," *Midland Asphalt*, 489 U.S. at 799, Defendants cannot appeal the denial of those immunities prior to final judgment. That portion of their appeal is therefore dismissed.

**C.    Federal Law Defenses**

Defendants – with the exception of the Port Authority, discussed *infra* – appeal only the denial of their motion for summary judgment on Stafford Act discretionary immunity.

**1.    Whether Stafford Act Immunity is a Collateral Order Subject to Interlocutory Appeal**

For the district court's denial of Stafford Act immunity to be "effectively unreviewable on appeal from final judgment," section 305 of the Stafford Act must confer immunity from suit or its functional equivalent. Once again we start with the language of the statute. *See, e.g., United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940). Section 305 of the Stafford Act, titled "Nonliability of Federal Government," provides:

> The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the

part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

42 U.S.C. § 5148. Elsewhere in Title 42 of the Code, a different section provides that "a covered person shall be immune from suit and liability." *See, e.g.*, 42 U.S.C. § 247d-6d(a)(1) (amended 2005). At first blush, then – because it makes no reference to immunity from suit – it appears that the Stafford Act confers only a defense to liability.

While we are the first circuit to consider the appealability under *Cohen* of a denial of a Stafford Act defense, two other circuits and several district courts have suggested that the Stafford Act provides immunity from suit. In *Rosas v. Brock*, the Eleventh Circuit relied upon the legislative history of the Stafford Act to conclude that Congress intended "to preclude judicial review of all disaster relief claims based upon the discretionary actions of federal employees," in part because it "was concerned . . . about . . . the certain costs of defending suits arising from government relief." 826 F.2d 1004, 1008 (11th Cir. 1987). The court relied on the report of Representative Whittington, Chairman of the House Public Works Committee, which stated:

> We have further provided that if the agencies of the Government make a mistake in the administration of the Disaster Relief Act that the Government *may not be sued*. Strange as it may seem, there are many suits pending in the Court of Claims today against the Government because of alleged mistakes made in the administration of other relief acts . . . . We have put a stipulation in here that there shall be no liability on the part of the Government.

*Id.* at n.1 (quoting H.R. 8396, 81st Cong., 2d Sess., 96 Cong. Rec. 11895, 11912 (1950))

(emphasis added).[20]

The Ninth Circuit likewise suggested that section 305 of the Stafford Act conferred immunity from suit. It held that "decisions involving the allocation and deployment of limited governmental resources are the type of administrative judgment that the discretionary function exception was designed to immunize from suit." *Graham v. FEMA*, 149 F.3d 997, 1006 (9th Cir. 1998) (quoting *Fang v. United States,* 140 F.3d 1238, 1241-42 (9th Cir. 1998)). A district court in this circuit has also opined that "[t]he language of the statute and the legislative history of the Stafford Act clearly preclude discretionary actions taken under the Stafford Act from judicial review." *Benzman v. Whitman*, No. 04 cv. 1888, 2006 WL 250527, at *22 (S.D.N.Y. Feb. 2, 2006).

The Stafford Act is not the only federal statute that provides a "discretionary function" immunity. The Federal Tort Claims Act ("FTCA") also contains a discretionary function exception. 28 U.S.C. § 2680(a). The statutes employ practically identical language: both provide protection for "the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a [F]ederal agency or an employee of the [Federal] Government . . . ." 42 U.S.C § 5148; 28 U.S.C. § 2680(a) (alterations in FTCA).[21] Furthermore,

---

[20]Other courts have also taken note of Representative Whittington's statement. *See, e.g.*, *Dureiko v. United States*, 209 F.3d 1345, 1352 (Fed. Cir. 2000); *Ornellas v. United States*, 2 Cl. Ct. 378, 380 (Cl. Ct. 1983); *Benzman v. Whitman*, No. 04 cv. 1888, 2006 WL 250527, at *22 (S.D.N.Y. Feb. 2, 2006).

[21] The discretionary function exception in the FTCA provides, in relevant part, that:
The provisions of this chapter and section 1346(b) of this title shall not apply to [a]ny claim based upon an act or omission of an

-33-

we have previously considered the FTCA in analyzing other discretionary function immunities. *See, e.g.*, *In re Joint E. & S. Dists. Asbestos Litig.*, 891 F.2d 31, 34 (2d Cir. 1989) (examining the FTCA to determine that the discretionary function exception should be read into the Suits in Admiralty Act, even though that Act "contain[ed] no express exception for discretionary functions"). Finally, it appears that the discretionary function defense in the Stafford Act was based upon the discretionary function exception in the FTCA.[22] Thus, we consider the policies for the FTCA discretionary function exception, and prior interpretations of that exception, for guidance on the nature of the Stafford Act discretionary function immunity.[23]

---

> employee of the Government, . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

We note that immunity under the FTCA appears somewhat broader than that under the Stafford Act, as the FTCA adds "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Whether this suggests that the discretionary function immunity contained in the Stafford Act does not protect a government agency or employee from charges of abuse of discretion is a question we need not reach.

[22] Discretionary function immunity was added to the Stafford Act's predecessor after the Secretary of the Army requested that Congress "incorporate language to insure that in the performance of these functions, the Federal Government shall not be liable for claims based upon the exercise of or the failure to exercise a discretionary duty as provided in section 2680(a) of title 28, United States Code." H.R. Rep. No. 81-2727, at 1, 7 (1950) (Letter from Frank Pace, Jr., Secretary of the Army, to Hon. Will M. Whittington, Chairman, Committee on Public Works, House of Representatives (June 7, 1950)).

[23] One could argue that the limitations on the waiver of sovereign immunity in the FTCA would seem to be in play here. The FTCA applies when the government is sued for state-law based torts; the claims here are grounded in New York state law and allege a failure to exercise due care. While Defendants invoke the immunity contained in the Stafford Act, not the FTCA, the discretionary function exception under the FTCA may be relevant to the district court's analysis of common law derivative discretionary function immunity. *See In re World Trade Ctr.*

-34-

With its passage of the FTCA in 1946, Congress "waived sovereign immunity from suit for certain specified torts of federal employees." *Dalehite v. United States*, 346 U.S. 15, 17 (1953), *partially overruled on other grounds by Rayonier Inc. v. United States*, 352 U.S. 315 (1957);[24] *see also* 28 U.S.C. § 2674. "This waiver, however, operates subject to numerous conditions, each of which must be satisfied for a court to exercise jurisdiction." *Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004).

Exempted from the FTCA's waiver of sovereign immunity are the classes of claims contained in section 2680, including the discretionary function exception in section 2680(a). *Varig Airlines*, 467 U.S. at 808. The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Id.* The Supreme Court has noted that the discretionary function exception was intended to "avoid[] any possibility that the [FTCA] may be construed to authorize damage suits against the Government growing out of a legally authorized activity, merely because the same conduct by a private individual would be tortious." *Dalehite*, 346 U.S. at 27 (internal citations omitted).

The Supreme Court recognized that this "exception was drafted merely as a 'clarifying

---

*Disaster Site Litig.*, 456 F. Supp. 2d at 566 (stating that, with a proper showing of control by federal agencies, the defendants would "enjoy the same immunity as would be conferred on discretionary acts and decisions of federal officers and employees").

[24]*See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 n.10 (1984) (noting that "fundamental aspects of *Dalehite*, including its construction of § 2680(a), remain undisturbed" after *Rayonier*).

amendment' to the FTCA, since Congress 'believed that claims of the kind embraced by the discretionary function exception would have been exempted from the waiver of sovereign immunity by judicial construction.'" *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 891 F.2d at 35 (citations omitted). Section 2680(a) protects the "policy judgment[s]" of government officers – *i.e.*, "the discretion of the executive or the administrator to act according to [his or her] judgment of the best course." *Dalehite*, 346 U.S. at 34-36. The discretionary function exception was designed to prevent plaintiffs from testing "the constitutionality of legislation, the legality of regulations, or the propriety of a discretionary administrative act . . . through the medium of a damage suit for tort. The same holds true of other administrative action[s] not of a regulatory nature, such as . . . the execution of a Federal project . . . ." *Varig Airlines*, 467 U.S. at 809-10.

The FTCA discretionary function exception is thus a form of retained sovereign immunity. As a result, the waiver of federal sovereign immunity does not encompass actions based upon the performance of, or failure to perform, discretionary functions. The Supreme Court's latest foray in to this area confirms our view. *Ali v. Fed. Bureau of Prisons*, 128 S. Ct. 831, 834 (2008) ("This case concerns the scope of 28 U. S. C. § 2680, which carves out certain exceptions to the United States' waiver of sovereign immunity for torts committed by federal employees.").

However, several circuits have suggested that the "sovereign immunity of the United States is not 'a right not to be sued.'" *Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d 265, 277 (5th Cir. 2007). In *Houston Community Hospital*, the hospital provided care to three federal employees only after obtaining their levels of coverage from Blue Cross, a

contract health insurer of the three under the Federal Employees Health Benefits Act ("FEHBA"). When the bills were submitted to Blue Cross by the hospital, Blue Cross refused to pay a substantial portion of each bill. The hospital sued Blue Cross in state court on a state tort theory of negligent misrepresentation and Blue Cross removed to federal court. Blue Cross moved to dismiss on two immunity grounds (official immunity and sovereign immunity of the United States). *Id.* at 267-68. The district court denied the motion and, without leave from the lower court, Blue Cross filed an appeal with the Fifth Circuit. With regard to the claim of sovereign immunity, the circuit ruled that federal sovereign immunity did not encompass the right not to be sued. *Id.* at 277. The court relied upon the Seventh Circuit's decision in *Pullman Construction Industries, Inc. v. United States*, 23 F.3d 1166 (7th Cir. 1994). *Id.* at 277-78.

In *Pullman*, a bankruptcy debtor sued the United States to recover, as preferential transfers, approximately $500,000 in federal taxes paid to the United States during the 90-day period before bankruptcy. 23 F.3d at 1167. The Seventh Circuit held that the government was not entitled to an interlocutory appeal of the denial of a motion to dismiss on sovereign immunity grounds. *Id.* at 1169-70. Notwithstanding the federal government's waiver of immunity under 11 U.S.C. § 106(a), the circuit court undertook a sweeping and entertaining analysis of the concept of sovereign immunity. The government asserted that its claim of immunity from suit was clear – giving the court jurisdiction to hear the interlocutory appeal. The court, however, was surprised that the appeal in *Pullman* was the first of its kind. *Id.* at 1168.

Writing for the court, Judge Easterbrook observed that "[d]escriptions of the United States' sovereign immunity often refer to freedom from suit as well as freedom from an

obligation to pay damages," and explained that the genesis of the "right not to be sued" arose from the "newfangled nature of the doctrine permitting appeals based on claims of rights to be free from litigation." *Id.* But because the United States Code was "riddled with statutes authorizing relief against the United States and its agencies," he concluded that "[f]ederal sovereign immunity today is nothing but a condensed way to refer to the fact that monetary relief is permissible only to the extent Congress has authorized it." *Id.* (citing the FTCA, among other statutes). Any residual sovereign immunity was only a defense to liability that did not entitle the government to immediate appeal under the collateral order doctrine. *Id.* at 1168-69 (acknowledging the "venerable tradition of litigation between the United States and taxpayers to determine amounts due and recover overpayments").

One should be careful in drawing too broad a conclusion from the *Pullman* court's analysis. In our view, *Pullman* attempts to chart the general state of the law of sovereign immunity in an age of an omnipresent federal government. We read *Pullman* only to conclude that the traditional concept of sovereign immunity has been whittled away by Congress. It has been replaced by "[a]n elaborate system permitting some monetary claims and limiting or *forbidding* others." *Id.* at 1168 (emphasis added); *see also Alaska v. United States*, 64 F.3d 1352, 1355 (9th Cir. 1995). The court did not declare that a right not to be sued could not be extended to a category of claims; it simply said that the source of the right had to come from Congress (or the Constitution) and not from a claim of sovereign immunity.

We are not convinced that *Pullman* or its progeny counsel us to disregard the statements of the Supreme Court that sovereign immunity encompasses a right not to be sued, *see FDIC v.*

*Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Minnesota v. United States*, 305 U.S. 382, 387 (1939) ("The exemption of the United States from being sued without its consent extends to a suit by a State."), even though those statements were not made in cases involving interlocutory appeals. But even if one could safely say that the United States has abandoned the traditional concept of sovereign immunity – replacing it with hundreds of statutes that authorize or circumscribe the right to sue the United States, while using the terms "liability" or "action" without any discernable consistency – that view would not end our inquiry. The Stafford Act provides a specific congressional recognition of discretionary function immunity. It is therefore distinguishable from the question of reserved sovereign immunity at issue in *Pullman* and its progeny. Finally, we must still determine if the Stafford Act discretionary act immunity protects a substantial public interest that would be imperiled if an immediate appeal is not available.

In addition, the discretionary function exception serves to protect "the principles embodied in the separation of powers doctrine by keeping the judiciary from deciding questions consigned to the executive and legislative branches of the government." *Caban v. United States*, 671 F.2d 1230, 1233 (2d Cir. 1982); *see also Andrulonis v. United States*, 924 F.2d 1210, 1218 (2d Cir. 1991), *vacated on other grounds by New York State Dep't of Health v. Andrulonis*, 502 U.S. 801 (1991). Separation of powers is "a doctrine to which the courts must adhere even in the absence of an explicit statutory command," *Canadian Transp. Co. v. United States*, 663 F.2d 1081, 1086 (D.C. Cir. 1980), and "requires that a branch not impair another in the performance

of its constitutional duties," *Loving v. United States*, 517 U.S. 748, 757 (1996).[25]

The discretionary function immunity in the Stafford Act, like its counterpart in the FTCA, is obviously animated by separation of powers concerns. Section 305 of the Stafford Act protects a right – the right of federal agencies to make discretionary decisions when engaged in disaster relief efforts without fear of judicial second-guessing – that is a "particular value of a high order," *Will*, 546 U.S. at 352. Denying immediate review of the denial of such an immunity could well result in "a trial that would imperil a substantial public interest." *Id.* at 353. The Act provides that the United States will not be liable for those discretionary decisions made under its authority. The nature of those decisions – made during a declared national emergency – raise significant separation of powers concerns if, as a matter of law, the decision was authorized by the Act. To deny an interlocutory appeal in that circumstance would be contrary to the policy concerns first set forth in *Cohen* and most recently articulated in *Will*.[26] Although here the Defendants claiming immunity from suit are not federal agencies or officials, our conclusion that

---

[25]As "[t]he wellspring of the discretionary function exception is the doctrine of separation of powers," which courts must respect even if there is no explicit statutory requirement, this Court read an implied discretionary function defense into the Suits in Admiralty Act, which contains no express exception for discretionary functions. *In re Joint E. & S. Dists. Asbestos Litig.*, 891 F.2d at 34-35.

[26]We recognize that this conclusion may seem at odds with our determination that the New York Disaster Act confers only a defense from liability. *Brown* concluded that all New York state defenses – including discretionary function defenses – were merely defenses to liability. 89 N.Y.2d at 192. As the New York Court of Appeals has concluded that discretionary function "immunity" is merely a defense to liability, it would be improper for this Court to import the separation of powers concerns extant in our discretionary function immunity jurisprudence into our understanding of New York immunities. *Accord Grabowski*, 922 F.2d at 1106-09.

section 305 of the Stafford Act provides immunity from suit provides us with collateral order jurisdiction to determine the substantive question of whether that immunity may extend derivatively to non-federal entities working in cooperation with federal agencies under the Stafford Act. *Cf. Del Campo v. Kennedy*, No. 07-15048, 2008 WL 320772, at *3 (9th Cir. Feb. 6, 2008) ("Whether [Eleventh Amendment] immunity reaches beyond 'states and state entities' is the substantive issue we face, which we may not prejudge by denying jurisdiction to decide it."); *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1339 (11th Cir. 2007) (exercising jurisdiction over a collateral order appeal by a defendant claiming derivative *Feres* immunity because the defendant "ha[d] a substantial claim to a true immunity from suit").

Defendants' claims also satisfy the other two prongs of the *Cohen* collateral order rule: they "conclusively determine the disputed question" and "resolve an important issue completely separate from the merits of the action." *Will*, 546 U.S. at 349. The District Court found that the Army Corps, OSHA, and the EPA each occupied and performed certain leadership roles at the clean-up sites. Defendants contend that they are entitled to derivative Stafford Act immunity based on these facts, which "the District Court deemed sufficiently supported for purposes of summary judgment." *Salim*, 93 F.3d at 89 (quoting *Behrens*, 516 U.S. at 313). The immunity defense is, furthermore, "an important issue completely separate from the merits of the action." *Aliotta*, 199 F.3d at 82. Thus, we have jurisdiction over the Stafford Act appeal.

**2.     Derivative Stafford Act Discretionary Function Immunity**

Defendants are apparently "the first to claim *derivative* immunity under the Stafford Act

since it was enacted in 1974." *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d at 144. Defendants contend that the Stafford Act immunity should be derivatively extended to non-federal responders to allow these entities to "seamlessly implement the discretionary decisions and instructions of federal experts and agencies." The district court's resolution of Defendants' asserted federal immunity is somewhat ambiguous. To the extent it held that Defendants are not entitled to immunity under the language of the Stafford Act, we agree. Defendants are not federal agencies within the statutory definition, nor are they employees of the federal government. *See* 42 U.S.C. § 5122(8) ("'Federal agency' means any department, independent establishment, Government corporation, or other agency of the executive branch of the Federal Government, including the United States Postal Service, but shall not include the American National Red Cross."). Yet Defendants do not appear to claim immunity directly under the terms of the Stafford Act. They argue that the same immunity that would apply to federal agencies under section 5148 extends derivatively to them pursuant to federal common law principles articulated in *Yearsley v. W.A. Ross. Construction Co.*, 309 U.S. 18 (1940), and *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).

The district court recognized that derivative federal immunity *might* extend to Defendants for "federally instructed discretionary decisions," *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 566, consistent with the reasoning of *Yearsley* and *Boyle*. It denied Defendants' motion for summary judgment on this derivative immunity claim, however, because of unresolved factual issues in the current record. *See id.* In doing so, the district court stated that upon a proper showing of federal control "Defendants [would] enjoy the same immunity as

-42-

would be conferred on discretionary acts and decisions of federal officers and employees." *Id.* This statement suggests that the district court may not have ruled out the discretionary function immunity in section 305 of the Stafford Act as a source of derivative immunity that would extend under federal common law. However, somewhat confusingly, the district court then separately addressed and denied Defendants' claim to derivative Stafford Act immunity as a matter of law. *See id.* at 566-67. We address that legal conclusion, mindful of the ambiguity in the district court's opinion and that our discussion overlaps in some ways with its analysis of derivative federal common law immunity.

In determining whether Defendants may be entitled to derivative Stafford Act immunity, we again turn to the FTCA and particularly to the contractor defense that the Supreme Court fashioned in *Boyle*. The rationale for this defense is not to protect the contractor as a contractor, but "solely as a means of protecting the government's discretionary authority over areas of significant federal interest." *In re Agent Orange Prod. Liab. Litig.*, No. 05-1509-cv, 2008 WL 465659, at *7 (2d Cir. Feb. 22, 2008). As a threshold matter, the defense only arises in "an area of uniquely federal interest," where "a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law,' or the application of state law would 'frustrate specific objectives' of federal legislation." *Boyle*, 487 U.S. at 505 n.1, 507 (internal citations omitted). Although a significant conflict is obviously present where "the state-imposed duty of care that is the asserted basis of the contractor's liability . . . is precisely contrary to the duty imposed by the Government contract . . . .," *id.* at 509, *Boyle* " did not hold that a conflicting, express contractual duty was required for the contractor defense to preempt state

law." *In re Agent Orange*, 2008 WL 465659, at \*13. In other words, the requisite conflict is "not narrowly about duties imposed by contract," but "more broadly about federal policies and interests and the exercise of federal discretion, in the face of contrary state law." *Id.*

The issue as to Stafford Act derivative immunity for non-federal entities is whether the purpose of the Stafford Act to assure a prompt and comprehensive federal response to a national disaster would be frustrated by imposition of liability upon these entities when their actions are taken under the specific direction and close supervision of federal agencies, comparable, with some adaptation, to the restrictions imposed on the defense contractor in *Boyle*.[27] In that event, as in *Boyle*, federal common law should protect paramount federal interests and displace, to some extent, the state substantive law liability to which ATSSSA refers.

The discretionary function immunity in the Stafford Act applies only to discretionary functions or duties "on the part of a Federal agency or an employee of the Federal Government *in carrying out the provisions of this chapter*."[28] 42 U.S.C. § 5148 (emphasis added). Stafford Act

---

[27] There is also a distinction between the contractor defense and a derivative Stafford Act immunity that arises from the nature of the two causes of action, but, in the end, this distinction is not an obstacle to some degree of derivative Stafford Act immunity. In *Boyle*, the plaintiff invoked the federal court's diversity jurisdiction, and based its cause of action directly on state tort law. In the pending case, the suit was removed from state court because of the preemptive effect of ATSSSA's provision for exclusive federal court jurisdiction over a federal cause of action. However, ATSSSA provides that the applicable substantive law "shall be derived from the law . . . of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law." ATSSSA § 408(b)(2).

[28] The Stafford Act clearly contemplates that the United States may be liable for certain acts. The President is authorized to direct federal agencies "to clear debris and wreckage resulting from a major disaster from publicly and privately owned lands and waters," 42 U.S.C. § 5173(a)(1), but only if the affected State or local government "first agree[s] to indemnify the

immunity requires a determination that the agencies involved were, indeed, acting within the scope of the Act. If they were, the next question is whether that immunity flows to Defendants under a slightly modified version of the standards first set forth in *Boyle*, 487 U.S. at 511.

### 3. Defendants' Entitlement to Derivative Discretionary Function Immunity under the Stafford Act

#### a. Discretionary Function Immunity

As Defendants seek derivative immunity, they must initially show that the Army Corps, OSHA, and the EPA were entitled to discretionary function immunity under the Stafford Act for the challenged actions.[29] 42 U.S.C. § 5148. In *Gaubert* and *Berkovitz*, the Supreme Court articulated two requirements for determining when an action or function is "discretionary" under the FTCA. *See United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

First, the act must "involve an element of judgment or choice." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (internal quotation marks omitted). An act does not involve an element or judgment or choice if it is mandatory; if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow . . . the employee has

_____

Federal Government against any claim arising from such removal," 42 U.S.C. § 5173(b).

[29]Defendants claimed federal control over three distinct areas of the rescue and recovery effort: "(1) the Army Corps assumed control over the design, implementation and enforcement of environmental health and safety monitoring at Fresh Kills; (2) OSHA assumed the lead role for respirator distribution, fit-testing, training and use at and around Ground Zero; and (3) the EPA assumed lead responsibility for environmental monitoring and hazardous waste removal." *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 563.

no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. In such circumstances, the immunity will not apply.

Second, the judgment must be grounded in considerations of public policy. *See, e.g.*, *Coulthurst*, 214 F.3d at 109. Not every act that involves "discretion" is protected. The *Gaubert* Court gave an example of a "discretionary act" that was within the scope of a government agent's employment, but not within the discretionary function exception. *Gaubert*, 499 U.S. at 325 n.7. If an official "drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy." *Id.* Only acts "based on the purposes that the regulatory regime seeks to accomplish" are protected. *Id.* The implementation of a regulatory scheme that grants the agency discretion to determine the best way to execute its mission is entitled to discretionary function immunity.[30] *Berkovitz*, 486 U.S. at 546; *Varig Airlines*, 467 U.S. at 813-14.

While the district court need not identify the entire range of federal action that would render the federal agencies immune, it should look to the various declarations, statutes, and plans that guided the agencies in their disaster relief efforts under the Federal Response Plan for the first limit on Defendants' claim to derivative immunity. Defendants will have to show that the actions

---

[30]The limits of the defense comport with the purposes of discretionary function immunity. Separation of power concerns are not implicated when the "judgment" of a government official is limited to abiding by a statute that does not allow for the exercise of discretion. *Berkovitz*, 486 U.S. at 544. Likewise, acts that are nominally "discretionary" that are not "grounded in regulatory policy" warrant no protection from judicial oversight. *Gaubert*, 499 U.S. at 325 n.7.

-46-

for which they seek derivative immunity were controlled by agencies that were, themselves, entitled to Stafford Act immunity. As the parties did not brief this issue, we leave to the district court the task of considering, in the first instance, the extent to which various legislative and regulatory measures grant the Army Corps, OSHA, and the EPA discretion to carry out the provisions of the Stafford Act. 42 U.S.C § 5148; *accord Berkovitz*, 486 U.S. at 545 (leaving to the district court to decide whether "agency officials appropriately exercise[d] policy judgment in determining that a vaccine product complies with the relevant safety standards" given the "abstruse[ness]" of the regulations and scant record).

### b. Derivative Immunity

If Defendants show that the applicable agencies were entitled to discretionary function immunity under the Stafford Act, they may be entitled to derivative immunity. Derivative immunity was first extended to private contractors in *Yearsley*, where the contractor was working pursuant to the authorization and direction of the federal government and the acts of which the plaintiff complained fell within the scope of those government directives. *Yearsley*, 309 U.S. at 20-21. In *Boyle*, the Court refined the requirements for a type of derivative immunity for government military contractors. 487 U.S. at 511-12. *Boyle* held that a military contractor was entitled to a federal defense from a state law tort claim where: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512. The first requirement "is designed to ensure that 'a conflict with state law exists,'" *In re Agent Orange Prod. Liab. Litig.*, 2008 WL

-47-

465659, at *10 (quoting *Lewis v. Babcock Indus., Inc.*, 985 F.2d 83, 86 (2d Cir. 1993)), and, along with the second requirement, to "assure that the suit is within the area where the policy of the 'discretionary function' would be frustrated." *Boyle*, 487 U.S. at 512. The third condition eliminates the incentive for manufacturers to take advantage of this defense by withholding from the government their knowledge of risks. *Id.*

Courts have developed the government contractor defense primarily in the military contractor context. *See, e.g.*, *Malesko v. Corr. Servs. Corp.*, 229 F.3d 374, 382 (2d Cir. 2000), *rev'd on other grounds by* 534 U.S. 61 (2001). While this Court has yet to decide whether the defense extends to contractors in non-military contexts, *id.*, other circuits have held that the defense can apply outside the military context. *See, e.g.*, *Carley v. Wheeled Coach*, 991 F.2d 1117, 1123 (3d Cir. 1993); *Boruski v. United States*, 803 F.2d 1421, 1430 (7th Cir. 1986); *Burgess v. Colo. Serum Co.*, 772 F.2d 844, 846 (11th Cir. 1985); *but see In re Haw. Fed. Asbestos Cases*, 960 F.2d 806, 810-12 (9th Cir. 1992) (limiting *Boyle* to military contractors). The Supreme Court likewise suggested that the defense is not limited to military contractors: "Where the government has directed a contractor to do the very thing that is the subject of the claim, we have recognized this as a special circumstance where the contractor may assert a defense." *Malesko*, 534 U.S. at 74 n.6 (citing *Boyle*). Without deciding its applicability in other contexts, we think that the rationale for the government contractor defense would extend to the disaster relief context due to the unique federal interest in coordinating federal disaster assistance and streamlining the management of large-scale disaster recovery projects, as evidenced by the Stafford Act. If a federal agency orders a private contractor or City agency to implement

-48-

decisions made by the federal agency, in its discretion, we think that "the interests of the United States will be directly affected" if the contractor or City agency does not follow those orders for fear of liability. *Boyle*, 487 U.S. at 507. A finding that federal agencies exercised supervision, control, and enforcement authority over non-federal entities involved in the disaster relief efforts is essential to establishing derivative Stafford Act immunity and it is an element the district court should not lightly presume simply because the federal government is involved in or coordinates disaster relief efforts under the Stafford Act. [31]

Derivative immunity under the *Boyle* framework could apply in the Stafford Act context where: (1) the agency, in its discretion, approved reasonably precise specifications regarding the management of a recovery site; (2) the agency supervised and controlled an entity charged with implementing those specifications; and (3) the entity warned the agency about any dangers known to it but not to the agency. *Accord Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1480 (5th Cir. 1989); *see also Boyle*, 487 U.S. at 512. However, if the government merely accepted, without substantive review or enforcement authority, decisions made by an entity, that entity would not be entitled to derivative discretionary function immunity. *Trevino,* 865 F.2d at 1480. Furthermore, derivative immunity will not preclude recovery for injuries occasioned by violation of state statutes if the entity could have abided by those statutes while implementing the agency's specifications. Derivative immunity flows only where there is a "'significant conflict' between

---

[31] Indeed, the model of federal assistance under the Stafford Act is in many ways one of cooperation with, rather than control over, state and local governments, independent contractors, and relief organizations. Mere cooperation with state and local agencies does not warrant an extension of derivative immunity.

the state law and a federal policy or interest," *Boyle*, 487 U.S. at 509, and where the "policy of the 'discretionary function' would be frustrated," *id.* at 512.[32]

Here, for example, the district court found that OSHA was granted control over respirator distribution, fitting, and training. *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 534. Defendants may be entitled to derivative discretionary function immunity regarding claims arising from those activities if: (1) OSHA made certain discretionary policy judgments that resulted in reasonably precise specifications regarding respirator distribution, fitting, and training that were based on the "purposes that the regulatory regime seeks to accomplish," *Gaubert*, 499 U.S. at 325 n.7; (2) OSHA supervised and controlled Defendants in implementing these reasonably precise specifications; and (3) Defendants were not aware of dangers about which OSHA was unaware.

If, however, Defendants set certain respirator policies which OSHA then "rubber stamped," Defendants would not be entitled to derivative immunity.[33] *See Trevino*, 865 F.2d at

---

[32]*Boyle* provides an example: if the government contracted for an air conditioner, "specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary." *Boyle*, 487 U.S. at 509. Because the government "contractor could comply with both its contractual obligations and the state-prescribed duty of care," the contractor would not be entitled to derivative immunity on a suit regarding that safety feature. *Id.*

[33]As the district court recognized, neither the President nor the Governor "authorize[d] wholesale suspension" of the labor laws, even though they had statutory authority to do so. *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 537; *see also Boyle*, 487 U.S. at 509. The district court was correct to conclude that the state labor laws are ousted – and Defendants are immune from claims regarding the laws – by the protocols developed by the federal agencies only if "adherence to the requirements of the labor law conflicts with" these protocols. *In re*

1479-80. Likewise, if Defendants were charged with ensuring that their own workers were wearing respirators, they would not be entitled to immunity for not enforcing OSHA's requirements.

While the district court held that the Army Corps, OSHA, and the EPA assumed lead agency roles for various response functions in the wake of the September 11, 2001 attacks, we think the court was correct to conclude that the record "present[ed] a picture of cooperation and collaboration" among the various entities. *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 566. We agree that this picture was not, on Defendants' motion for summary judgment, "sufficiently clear to enable the court to demark the boundary between federally instructed discretionary decisions, and those made by the various Defendants."[34] *Id.* While we conclude that the district court erred in determining that derivative Stafford Act immunity does not exist as a matter of law, we affirm the court's decision to deny Defendants' motion for summary judgment.

**4.     The Port Authority's *Pani* Arguments**

The Port Authority contends that it is entitled to derivative federal immunity under *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71-72 (2d Cir. 1998). We reject the Port Authority's arguments.

_____

*World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 566.

[34]We are not permitted, on this interlocutory appeal, to entertain challenges to the district court's conclusions about sufficiency of evidence. *See State Employees Bargaining Agent Coalition. v. Rowland*, 494 F.3d 71, 94 (2d Cir. 2007); *Salim*, 93 F.3d at 89; *see also Behrens*, 516 U.S. at 312-13.

In *Pani*, plaintiff filed suit against the defendant Medicare carrier, Empire,[35] alleging negligence, tortious interference with contract, and breach of contract due to Empire's report to the United States government of Pani's possible fraud. *Id.* at 70. Empire had reported to the government that "it suspected Pani had submitted claims for procedures he had not performed or for procedures that were not," in fact, what he reported them to be. *Id.* The government investigated Empire's allegations, and Pani was subsequently convicted in both federal and state court of fraud, and found civilly liable to the federal government under the False Claims Act. *Id.* After Pani sued Empire, the district court dismissed Pani's complaint on the premise that Empire was entitled to "official immunity." *Id.* at 71. Noting that the "complaint confined Empire's alleged wrongdoing to investigating and reporting Pani for fraud," this Court framed the issue narrowly: "whether a Medicare carrier is entitled to official immunity for the performance of its duty to investigate and report possible fraud." *Id.* We concluded that "[t]he investigation and reporting of possible Medicare fraud is precisely the type of delegated discretionary function that the public interest requires to be protected by immunity." *Id.* at 73.

Similarly, "when a private contractor, hired to perform a quintessential governmental function, in the course of its official duties conveys information with possible national security implications to the agency charged with its oversight, that contractor is absolutely immune from state tort liability for claims resulting from that information-sharing." *Murray v. Northrop*

---

[35]As a carrier, Empire was "responsible for processing Medicare claims submitted by health-care providers, including assigning authorization codes, making payments, and reviewing claims for possible fraud." *Pani*, 152 F.3d at 70.

-52-

*Grumman Info. Tech., Inc.*, 444 F.3d 169, 175 (2d Cir. 2006). The defendants in *Murray*, like Empire in *Pani*, were "required by federal regulations . . . to notify the [government] promptly whenever a participant [wa]s terminated from . . . employment." *Id.* (citing 22 C.F.R. § 139.4). While we extended immunity to the defendants in *Murray*, we nonetheless noted that "immunity is appropriate only when 'the contributions of immunity to effective government . . . outweigh the . . . harm to individual citizens.'" *Id.* at 175 (quoting *Doe v. McMillan*, 412 U.S. 306, 320 (1973)) (alterations in original).

The Port Authority argues *Pani* applies here because the federal government promised to pay all of the eligible costs of debris removal related to the emergency response to the World Trade Center disaster, which included "indemnification for personal injury damages arising from such rescue, recovery and debris removal operations." In support of this claim, it cites 44 C.F.R. § 206.223(e), which provides in full:

> Negligence. No assistance will be provided to an applicant for damages caused by its own negligence. If negligence by another party results in damages, assistance may be provided, but will be conditioned on agreement by the applicant to cooperate with FEMA in all efforts necessary to recover the cost of such assistance from the negligent party.

44 C.F.R. § 206.223(e).

While it concedes that a promise by a third party to indemnify a defendant would ordinarily have no direct effect on the underlying lawsuit, the Port Authority contends that *Pani* requires a different result where the indemnity is provided by the federal government and arises from the applicant's performance of a federal function. Here, it contends, it receives "derivative

-53-

federal sovereign immunity" both because the federal government is the real party in interest and because the federal government delegated authority over certain "functions" to them – and derivative immunity is thus necessary to promote the government's interests. *See Pani*, 152 F.3d at 73. Further, it argues, because such immunity must be absolute to promote the government's interest, it is immunity from suit, not just liability.

First, the Port Authority is correct that *Pani* relied in part on a regulation that provided that the government entity "[wa]s the real party of interest in any litigation involving the administration of the [Medicare] program," and that Empire "act[ed] on behalf" of the government "in carrying out" the responsibilities that resulted in Pani's lawsuit. *Pani*, 152 F.3d at 74 (quoting 42 C.F.R. § 421.5(b)). However, the regulation here does not afford equivalent protection to the Port Authority, as it states: "No assistance will be provided to an applicant for damages caused by its own negligence." 44 C.F.R. § 206.223(e). Moreover, unlike the regulation in *Pani*, the general and conditional promise to indemnify in this case does not make the federal government the real party in interest.

Second, the Port Authority's role in the disaster relief efforts under the Federal Response Plan, unlike the defendants in *Pani* and *Murray*, was not that of an intermediary hired by the federal government to perform a delegated official function. As Plaintiffs point out, "[t]he Port Authority can point to nothing even suggesting that it was officially delegated any actual authority or duties by the federal government." Rather, the Port Authority is sued in its capacity as property owner of the World Trade Center site for vicarious liability of negligent acts of the subcontractors. This is plainly not a delegated official function of the federal government.

-54-

The Port Authority also misreads *Pani* in several ways.  First, it is clear that *Pani* addressed "official, not sovereign, immunity."  *Pani*, 152 F.3d at 73.  Second, *Pani* was limited to allegations made in the plaintiff's complaint regarding the defendant's report to the government that it suspected plaintiff had engaged in fraud.  *Id.*  We expressly did "not reach the issue of whether official immunity would apply to other conduct of a Medicare carrier or fiscal intermediary."  *Id.* at 74.  We determined that the defendant had a duty to report suspicions of fraud, and the conduct about which Pani complained – that Empire reported its suspicions that he engaged in Medicare fraud – was "clearly conduct within the outer perimeter" of the authority vested in Empire.  *Id.* at 73.  *Murray* extended that proposition no further.  *Murray*, 444 F.3d at 175.  Moreover, the regulations in *Pani* and *Murray required* each defendant to report the plaintiffs' actions to the government, and the suit against them arose directly out of those reports.  It was thus clear that the defendants were acting within the "scope of [their] obligations" to the government.  *Id.*  The Port Authority cites no regulations that required it to engage in the precise actions of which Plaintiffs complain.

Finally, given Plaintiffs' allegations here, any "contributions . . . to effective government" that might be gained by affording derivative immunity from suit to the Port Authority do not, as a matter of law, "outweigh the . . . harm to individual citizens."  *Id.* at 175 (citation omitted); *see also Forrester v. White*, 484 U.S. 219, 224 (1988) ("This Court has generally been quite sparing in its recognition of claims to absolute official immunity.").  For all of these reasons, this case differs substantially from *Pani* and *Murray*.  The Port Authority Defendants are entitled to no more protection from suit than any other defendant here.  We affirm the district court's denial of the

Port Authority's motion for immunity under *Pani*.

_____

Defendants contend that not extending immunity to them will result in "slower intergovernmental responses to future crises." The Construction Industry amicus brief goes further, warning us: "If the ordinary economic incentives to care are imposed on contractors by tort liability, then their response to the government's needs is likely to be tempered by the need for prudent self preservation. Liability as usual will require business as usual." What Defendants seek is an unprecedented extension of derivative discretionary immunity as a matter of law – an extension that, as a policy matter, would not only insulate them from liability but also bar Plaintiffs from seeking compensation for injuries they received while working at the World Trade Center disaster site and at the Fresh Kills Landfill.

Separation of powers animates discretionary function immunity; this doctrine does not permit us to extend limitless derivative immunity to ensure that, in the event of another attack, contractors are willing to assist in disaster recovery efforts. We are confined to the parameters of the derivative defense. Nonetheless, we observe that private contractors, unlike volunteers or conscripts, are paid for their services and able to pass along the cost of liability protection to the government, either by including the cost of liability insurance in their contract or by seeking indemnification from the government.

Moreover, Defendants' policy arguments are best addressed to Congress, which has already established a captive insurance fund intended to cover "all lawsuits arising from the debris

removal." Congress is thus well aware of its ability to mitigate the economic fall-out from the post-disaster clean-up. Congress could also recast the Stafford Act's immunity provision to provide for direct discretionary function immunity for state, local, and private entities that collaborate with federal agencies. *See* Gulf Coast Recovery Act, S. 1761, 109th Congress, 1st Sess. (introduced Sept. 22, 2005; no further action taken); *cf.* 6 U.S.C. § 442(d) (providing "rebuttable presumption" that government contractor defense applies to defendants who develop "qualified anti-terrorism technologies").[36]

The Stafford Act discretionary function immunity extends only to federal agencies and employees, 42 U.S.C. § 5148, and "[t]here is no justification for this Court to read exemptions into the Act beyond those provided by Congress," *Rayonier*, 352 U.S. at 320 (construing FTCA discretionary function immunity). The only immunity Defendants may seek is derivative; to be entitled to that, they must fulfill the requirements set forth above. As the district court noted, we must strike a "delicate balance" between the needs of Defendants, who insist that immunity is necessary to encourage companies to volunteer their efforts, and Plaintiffs, who were "the very individuals who, without thought of self, rushed to the aid of the City and their fallen comrades." *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 553. The standard we enunciate today attempts to strike that balance.

**Conclusion**

We grant Plaintiffs' motion to dismiss the appeal of the district court's denial of the state

---

[36]We intimate no opinion regarding the constitutionality of such a statute.

immunity defenses; deny Plaintiffs' motion to dismiss the appeal of the district court's denial of the federal immunity defenses; and affirm the district court's denial of Defendants' motion for summary judgment. We have considered the parties' other arguments, and find them without merit.[37]

For the foregoing reasons, the appeal is DISMISSED in part and the judgment of the district court is AFFIRMED in part.

_____

_____

---

[37]In light of the disposition of this appeal, we need not determine if we have jurisdiction to consider the district court's rejection of Plaintiffs' claim that ATSSSA preempts Defendants' claims of immunity.

We note that there appears to be an outstanding motion, filed June 14, 2007, by the International Municipal Lawyers Association seeking leave to "participate" as amicus curiae. Their prior motion for leave to file an amicus brief was granted; to the extent this second motion sought only to file a brief, we grant it as well. To the extent the motion sought leave to participate in any other manner, it is denied.