06-1166-cv (L)
Benzman, et al. v. Whitman, et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2007

Heard: December 10, 2007          Decided: April 22, 2008)

Docket Nos. 06-1166-cv (L), 06-1346-cv (CON), 06-1454-cv (XAP)

- - - - - - - - - - - - - - - - - - - - - - - - - -
GAIL BENZMAN, DIANE LAPSON, JIM GILROY,
ANAMAE GILROY, JOALISON POLETT, ROBERT
GULACK, JANICE FRIED, JOHN CALDER, JENNA
ORKIN, KELLY COLANGELO, GEORGE DINOS,
BRIAN EDWARDS, and SARA MANZANO-DIAZ, on
their behalf and on behalf of all other
persons similarly situated,
      Plaintiffs-Appellees-Cross-Appellants,

                    v.

CHRISTINE TODD WHITMAN, STEPHEN L. JOHNSON,[*]
and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
      Defendants-Appellants-Cross-Appellees.
- - - - - - - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN and CABRANES, <u>Circuit Judges</u>.[**]

---

[*]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Administrator of the U.S. Environmental Protection Agency Stephen L. Johnson is automatically submitted for former Administrator Michael O. Leavitt as an appellant in this case.

[**]The Honorable Wilfred Feinberg, originally a member of the panel, recused himself, and the appeal is being decided, pursuant to 2d Cir. Local Rule § 0.14(b), by the remaining members of the panel who are in agreement.

Appeal and cross-appeal from the February 2, 2006, Order of the United States District Court for the Southern District of New York (Deborah Batts, District Judge), denying in part and granting in part Defendants-Appellants' motions to dismiss claims for damages against former EPA Administrator and for other relief against EPA for alleged constitutional and statutory violations in the aftermath of the 9/11 disaster.

Affirmed in part, reversed in part, and remanded with directions to dismiss the complaint.

> Alisa B. Klein, Civil Division, Ryan D. Nelson, Deputy Asst. Atty. General, U.S. Dept. of Justice, Washington, D.C. (Peter D. Keisler, Asst. Atty. General, Jeffrey S. Bucholz, Principal Deputy Asst. Atty. General, Mark B. Stern, Civil Div., Sue Ellen Wooldridge, Asst. Atty. General, James C. Kilbourne, Robert H. Oakley, Environmental and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., on the brief), for Defendants-Appellants-Cross-Appellees.

> Sherrie R. Savett, Philadelphia, PA (Jeanne A. Markey, Michael T. Fantini, Casey M. Preston, Berger & Montague, P.C., Philadelphia, PA; Joel R. Kupferman, New York Environmental Law & Justice Project, New York, N.Y.; Bert A. Blitz, Shandell, Blitz, Blitz & Bookson, L.L.P., New York, N.Y., on the brief), for Plaintiffs-Appellees-Cross-Appellants.

JON O. NEWMAN, Circuit Judge.

This interlocutory appeal and cross-appeal present issues concerning individual and governmental agency liability, in the aftermath of the 9/11 attack, for alleged breach of duties owed to a putative plaintiff class of people who reside, attend school, or work

-2-

in lower Manhattan or Brooklyn. The principal claim is that Government officials misled the plaintiff class members by stating that the air quality in the period after the destruction of the World Trade Center towers was safe enough to permit return to homes, schools, and offices. The Defendants-Appellants are Christine Todd Whitman, the former Administrator of the Environmental Protection Agency ("EPA"), and Stephen L. Johnson, the current Administrator of EPA, and EPA (the latter two, collectively, "the EPA Defendants"). They appeal from the February 2, 2006, opinion and order of the District Court for the Southern District of New York (Deborah Batts, District Judge) ruling on the Defendants' motion to dismiss.

In No. 06-1166, Whitman appeals from the denial of her motion to dismiss the Plaintiffs' Bivens claim, see Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), on the ground, among others, of qualified immunity. In No. 06-1346, the EPA Defendants appeal, pursuant to 28 U.S.C. § 1292(b), from the denial of their motion to dismiss the Plaintiffs' claim under sections 706(1) and 706(2) of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"). In No. 06-1454, the Plaintiffs cross-appeal, also pursuant to section 1292(b), from the dismissal of the non-constitutional aspects of their APA claim and the dismissal of their claim against the EPA Defendants for mandamus and their claim against EPA under the citizen suit provision of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") 42 U.S.C. § 9659(a).

We reverse in Nos. 06-1166 and 06-1346 and affirm in No. 06-1454.

-3-

The Complaint.  Each of the Complaint's four counts relates to the Defendants' response to the presence of allegedly dangerous dust in the air above lower Manhattan and Brooklyn resulting from the collapse of the World Trade Center ("WTC") towers on September 11, 2001.  The allegations focus on the effect of that dust ("WTC dust") on air quality indoors--in apartments, offices, and schools.

Count One (the "Bivens count") is a Bivens claim seeking damages from Whitman in her individual capacity.  It alleges that in the weeks and months after 9/11 Whitman and EPA officials acting at her direction made statements regarding air quality in Lower Manhattan and Brooklyn that failed to report health risks associated with WTC dust or misrepresented the nature of those risks, and caused EPA to issue press releases containing those false and misleading statements, thereby violating the Plaintiffs' Fifth Amendment substantive due process right to be free from government-created health risks.  The Bivens count does not allege that Whitman intended to cause harm, but it does allege that she acted with deliberate indifference because she knew that the content of her and EPA's reassuring statements and press releases was false.

Count Two (the "APA count") is a claim under the APA against EPA. It alleges that EPA failed to fulfill various of its regulatory obligations in connection with air quality and interior building cleanup in the WTC area following 9/11.  Like the Bivens count against Whitman, the APA count alleges that EPA's acts and omissions in the aftermath of 9/11 violated the Plaintiffs' substantive rights under

the Due Process Clause of the Fifth Amendment. The APA count seeks, among other things, a finding of liability as to EPA and prospective injunctive relief in the form of an order compelling EPA to perform tests for hazardous substances in buildings housing offices, schools, and residences in lower Manhattan and Brooklyn; "implement a complete professional clean-up of all such buildings" that are determined to contain hazardous substances; and "implement a program for medical monitoring services" to detect, diagnose, study, and prevent any conditions caused by exposure to WTC dust.

Count Three is a mandamus claim against EPA, seeking an order compelling it to perform what the Plaintiffs allege are mandatory duties as to the removal of WTC dust from building interiors.

Count Four is a claim against EPA brought pursuant to subsection (1) of CERCLA's citizen-suit provision, 42 U.S.C. § 9659(a). Count Four alleges that EPA's handling of the WTC dust phenomenon in the aftermath of 9/11 violated National Contingency Plan ("NCP") regulations promulgated under CERCLA.

The District Court's decision. Whitman sought dismissal of the Bivens count on the ground that she was entitled to qualified immunity because her alleged conduct did not violate a constitutional right. Judge Batts denied her motion. See Benzman v. Whitman, No. 04 Civ. 1888, 2006 WL 250527, at *20 (S.D.N.Y. Feb. 2, 2006). Judge Batts held that the Bivens count stated a violation of a clearly established "substantive due process right to be free from official government policies that increase the risk of bodily harm[.]" Id. at *18; see id. at *19-*20.

-5-

EPA sought dismissal of the APA count under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the ground that judicial review of the underlying agency decisions was unavailable for two reasons. First, EPA argued that the discretionary function provision of the Stafford Act, 42 U.S.C. § 5148, precluded judicial review because the agency decisions on which the APA count is based were discretionary. See id. at *22. Second, EPA argued that the agency decisions forming the basis of the APA count did not constitute the sort of agency actions for which judicial review is available under the APA. See id. at *20. Judge Batts agreed with the EPA that the underlying agency decisions were discretionary because the relevant NCP regulations established non-mandatory duties; Judge Batts therefore dismissed, pursuant to the Stafford Act, those aspects of the APA count that were based on alleged violations of NCP regulations. See id. at *24. However, Judge Batts also ruled that the Stafford Act did not preclude judicial review of the entirety of the APA count because that count includes a constitutional claim against EPA, i.e., the same substantive due process claim that forms the basis of the Bivens count against Whitman. See id. at *25. Judge Batts also concluded that the agency action identified by the Plaintiffs in response to EPA's motion to dismiss--a voluntary clean-up program undertaken by EPA in the WTC area and completed before this litigation--constituted final "agency action" within the meaning of the APA, rendering the challenged agency decisions culminating in that action subject to judicial review. See id. at *26-*27.

Judge Batts dismissed the mandamus count on the ground that the

-6-

APA count, which had been sustained in part, provided the Plaintiffs with an adequate remedy for the same injuries implicated in the mandamus count. See id. at *27.

EPA sought dismissal of the CERCLA count on the ground that, because the count challenged EPA's performance of its regulatory duties, this count could not be brought under the subsection of CERCLA's citizen-suit provision that the Plaintiffs had invoked in the Complaint--subsection (1) of 42 U.S.C. § 9659(a). See id. at *28. Judge Batts agreed with EPA and dismissed the CERCLA count, observing that the Plaintiffs had alleged a failure by EPA to perform purportedly non-discretionary acts and duties under CERCLA; the appropriate claim, if any, would therefore have been against the Administrator of EPA pursuant to subsection (2). See id. at *29-*30.

Whitman appeals, under the collateral order doctrine, the denial of her motion to dismiss the Bivens count based on the defense of qualified immunity. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). EPA's appeal and the Plaintiffs' cross-appeal are brought pursuant to 28 U.S.C. § 1292(b).

## Discussion

I. The Bivens Count against Whitman

   Standard of Review. Whitman's appeal reasserts her claim to qualified immunity. Although qualified immunity is an affirmative defense, available to federal officials sued under Bivens, see Wilson v. Layne, 526 U.S. 603, 609 (1999), it may be asserted in a motion to dismiss under Rule 12(b)(6) of the Rules of Civil Procedure "as long as the defense is based on facts appearing on the face of the

-7-

complaint." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

This Court reviews de novo a district court's decision adjudicating a motion to dismiss based on qualified immunity, see, e.g., Pena v. DePrisco, 432 F.3d 98, 107 (2d Cir. 2005), and "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense," McKenna, 386 F.3d at 436; see, e.g., Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003).

The Plaintiffs' core allegation. The core of the Plaintiffs' substantive due process claim is that Whitman should be held personally liable for damages because she knew of the dangers posed by WTC dust and yet issued and approved a series of press releases that "falsely represented to the Plaintiffs and the putative Class that the air in and around Lower Manhattan was safe to breathe." Complaint ¶4.

Validity of the Bivens Claim. Our initial issue in considering the Bivens claim is whether the creation of a new implied cause of action for damages against a Government official is appropriate in the context presented by the Plaintiffs' complaint. A Bivens action is a blunt and powerful instrument for correcting constitutional violations and not an "automatic entitlement" associated with every governmental infraction. Wilkie v. Robbins, 127 S. Ct. 2588, 2597 (2007). It is important to bear in mind that the purpose for creating a Bivens cause of action is to deter unconstitutional behavior by individual federal officials. See Carlson v. Green, 446 U.S. 14, 21 (1980). The Supreme

-8-

Court has cautioned "'hesitation'" before "'authorizing a new kind of federal litigation'" in the Bivens context. See Wilkie, 127 U.S. at 2598 (quoting Bush v. Lucas, 462 U.S. 367, 378 (1983)). The Defendants assert a substantial basis for such hesitation by pointing out that no court has ever held a government official liable for denying substantive due process by issuing press releases or making public statements. Not only is the Plaintiffs' assertion of an implied cause of action unprecedented, it also encounters the substantial objection that Congress has already provided a statutory cause of action for claims "arising out of" the airplane crashes that destroyed the WTC towers. See Air Transportation Safety and System Stability Act ("ATSSSA"), § 408(b)(1), Pub. L. No. 107-42, 115 Stat. 230 (codified at 49 U.S.C. § 40101 note (2000 & Supp. IV 2004). The ATSSSA creates an exclusive federal cause of action for such claims, see id., to be brought in the Southern District of New York, see id. § 408(b)(3), and adjudicated on the basis of applicable state law, see id. § 408(b)(2). With respect to claims brought by workers alleging respiratory injuries sustained during post-9/11 cleanup efforts, we said that it "require[d] no great stretch" to view such injuries as "arising out of" the 9/11 plan crashes and stated "that Congress intended ATSSSA's cause of action to be sufficiently expansive to cover" such claims. See In re WTC Disaster Site, 414 F.3d 352, 377 (2d Cir. 2005). Whether or not an ATSSSA claim could be successfully maintained against Whitman, the fact that Congress established this exclusive

statutory cause of action weighs strongly against the judicial creation of a novel <u>Bivens</u> action implied by the substantive component of the Due Process Clause. <u>See</u> <u>Wilkie</u>, 127 S. Ct. at 2598.

Even in the absence of an alternative remedial scheme, we must evaluate whether any "special factors" weigh against creation of a novel <u>Bivens</u> action. <u>See</u> <u>id.</u> Here, "there are reasons for allowing Congress to prescribe the scope of relief that is made available." Bush, 462 U.S. at 380. Like the relationship between an agency and its employees, see id., or the regulation of military life, see Chappell v. Wallace, 462 U.S. 296, 304 (1983), the federal response to disasters, such as the events at issue here, involves "policy questions in an area that [has] received careful attention from Congress." Schweiker v. Chilicky, 487 U.S. 412, 423 (1988). Federal disaster response and clean-up efforts are an area in which "Congress [has] developed considerable familiarity" and "may inform itself through factfinding procedures such as hearings that are not available to the courts." <u>Bush</u>, 462 U.S. at 389. Indeed, we have recently recognized the additional separation of powers concern--"the right of federal agencies to make discretionary decisions when engaged in disaster relief efforts without the fear of judicial second-guessing"--that informs the Stafford Act's grant of discretionary function immunity to government officials engaged in administration of the Disaster Relief Act. <u>See</u> <u>In re World Trade Center Disaster Site Litigation</u>, No. 06-5324-cv, 2008 WL 783386, at *18 (2d Cir. Mar. 26,

-10-

2008). We therefore conclude that a suit against a federal official for decisions made as part of federal disaster response and cleanup efforts implicate the sort of "special factors" that counsel against creation of a <u>Bivens</u> remedy.

If an implied cause of action were available in this context, the next issue would be whether "the facts alleged show the officer's conduct violated a constitutional right," <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). "[T]o establish a violation of a right to substantive due process, a plaintiff must demonstrate . . . that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" <u>Pena</u>, 432 F.3d at 112 (quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 848 n.8 (1998)). As the Supreme Court noted in <u>County of Sacramento</u>, "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." 523 U.S. at 849. Nothing in the Plaintiffs' complaint alleges that any Defendant intended to injure anyone.

Mindful of the Supreme Court's admonition not to permit the Due Process Clause to "transform every tort committed by a state actor into a constitutional violation," <u>DeShaney v. Winnebago County Dep't of Social Services</u>, 489 U.S. 189, 202 (1989), we have recognized two "separate and distinct theories of liability" under the substantive component of the Due Process Clause: "special relationship" liability

-11-

and "state-created-danger" liability. Pena, 432 F.3d at 109.  In cases arising under 42 U.S.C. § 1983, we have applied with considerable stringency both "special relationship" liability, see Ying Jing Gan v. City of New York, 996 F.2d 522, 534 (2d Cir. 1993) (prosecutor lacked special relationship with complaining witness); Doe v. New York City Dep't of Social Services, 649 F.2d 134, 141 (2d Cir. 1981) (city's placement of child in foster care created special relationship), and "state-created-danger" liability, see Pena, 432 F.3d at 111-12 (state-created danger where police officers condoned fellow officer's drunk driving); Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir.  1998) (state-created danger where police officers handed weapon to robbery victim and drove him to scene of robber's arrest where victim shot the robber); Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir. 1993) (state-created danger where police officers permitted "skinheads" to beat up protestors).

In the pending case, the Plaintiffs' allegations fall far short of showing either the type of special relationship between governmental actor and victim or a state-created danger arising from "the relationship between the state and the private assailant," Pena, 432 F.3d at 109, that might lead to liability for denial of substantive due process.  Instead, they seek to allege a state-created danger, sufficient to impose such liability, based on a senior official's public statements that offered assurances of environmental safety that turned out to be substantially exaggerated—in essence a

-12-

mass tort for making inaccurate statements.  In considering a novel claim of this sort, we must heed the Supreme Court's cautionary words that "the Court has always been reluctant to expand the concept of substantive due process." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992).

We recently ruled that a claim similar to the Plaintiffs' did not allege the denial of a right to substantive due process. See Lombardi v. Whitman, 485 F.3d 73 (2d Cir. 2007).  The claim in Lombardi was brought against Whitman by emergency responders to the ground zero site in the immediate aftermath of the terrorist attack and by workers at the site in the weeks thereafter.  Like the Plaintiffs here, they claimed that many of the same statements at issue here violated their right to substantive due process by assuring them that it was safe to work at the site where they were subject to the same dangers from contaminated air alleged in the pending case.  We rejected the claim, primarily on the ground that, absent an allegation of intent to harm, a viable substantive due process violation could not be asserted against government officials, who, in the aftermath of an unprecedented disaster, were obliged to make operational decisions in a context where they were subject to competing considerations.  See id. at 83-85.

The Plaintiffs here seek to distinguish Lombardi on the ground that the considerations favoring prompt appearance at ground zero by first responders and other workers in order to minimize loss of life

-13-

and injury and to clear debris find no analogue in the decision of Whitman to assure area residents that it was safe to return. We agree that the considerations weighing upon Government officials in the two cases differ. While it was obviously important to have the Lombardi plaintiffs at ground zero promptly even if health risks would be encountered, the balance of competing governmental interests faced in reassuring people that it was safe to return to their homes and offices was materially different from that faced in Lombardi.

A flaw in the Plaintiffs' claim, however, is that, from the face of their complaint, it is apparent that Whitman did face a choice between competing considerations, although not the stark choice between telling a deliberate falsehood about health risks and issuing an accurate warning about them. As the Complaint alleges, quoting a report from the EPA's Office of Inspector General, the White House Council on Environmental Quality ("CEQ") "'influenced, through the collaboration process, the information that EPA communicated to the public through its early press releases when it convinced EPA to add reassuring statements and delete cautionary ones.'" Complaint ¶ 132. The realistic choice for Whitman was either to accept the White House guidance and reassure the public or disregard the CEQ's views in communicating with the public. A choice of that sort implicates precisely the competing governmental considerations that Lombardi recognized would preclude a valid claim of denial of substantive due process in the absence of an allegation that the Government official

-14-

acted with intent to harm.

Moreover, although the reasons to encourage the return of workers to the site promptly were undoubtedly weightier than any concern to encourage the return of residents to homes and offices, Whitman was subject to an array of competing considerations of the sort identified in Lombardi. See 485 F.3d at 84-85. Whether or not Whitman's resolution of such competing considerations was wise, indeed, even if her agency's overall performance was as deficient as the Plaintiffs allege, she has not engaged in conduct that "shocks the conscience" in the sense necessary to create constitutional liability for damages to thousands of people under the substantive component of the Due Process Clause.

We recognize that the Plaintiffs have alleged not only Whitman's "deliberate indifference" to the consequences of her decision, see, e.g., Complaint, ¶12, but have also alleged that the reassurances she issued were "knowingly false," id. ¶225. Preliminarily, we note that it is far from clear that a complaint adequately alleging knowing falsity would have survived dismissal in the absence of an allegation of intent to injure, and we are not ruling that such a complaint would have stated a valid Bivens claim. Indeed, two passages in Lombardi, read in combination, appear to preclude such a claim. We stated that "when agency officials decide how to reconcile competing governmental obligations in the face of disaster, only intent to cause harm arbitrarily can shock the conscience in a way that justifies

-15-

constitutional liability." Lombardi, 485 F.3d at 74. And we added, "Accepting as we must the allegation that the defendants made the wrong decision by disclosing information they knew to be inaccurate, and that this had tragic consequences for the plaintiffs, we conclude that a poor choice made by an executive official between or among the harms risked by the available options is not conscience-shocking merely because for some persons it resulted in grave consequences that a correct decision could have avoided." Id. at 85.

In any event, Plaintiff's Complaint has not adequately pleaded an allegation of knowing falsity. In assessing the sufficiency of the Complaint, we are guided by the Supreme Court's recent decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007). The Court there somewhat modified the previously applicable standard for assessing the sufficiency of complaints in civil cases and ruled that if a claim was not plausible, it would have to be supported by an allegation of some subsidiary facts to survive a motion to dismiss. See id. at 1965; Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), cert. pet. pending, 76 U.S.L.W. 3417 (2008) (interpreting Bell Atlantic to have established a "plausibility standard" for civil pleading).

In Iqbal, we ruled that an allegation that senior officials of the Department of Justice were involved in unlawful actions occurring at a maximum detention facility in New York City survived a motion to dismiss because it was plausible to believe that these officials would

-16-

have concerned themselves with the implementation of policies concerning the arrest and detention of those suspected of possible involvement in the 9/11 attack. See 490 F.3d at 166, 175-76. By contrast, a bare allegation that the head of a Government agency, guided by a relevant White House office, knew that her statements were false and "knowingly" issued false press releases is not plausible in the absence of some supporting facts. Although the complaint contains numerous allegations that various employees within EPA were aware of data indicating health risks,[1] there is no allegation that Whitman, from whom damages are sought in her personal capacity, was herself aware of such information. Perhaps, as a competent administrator, she

_____

[1]See, e.g., Complaint ¶ 56 (EPA officials knew the day after 9/11 that WTC dust samples contained 4 percent asbestos, a level higher than EPA's 1 percent threshold for danger.); ¶ 62 (More than a month after 9/11 a member of the EPA Science Advisory Board warned "that levels of lead in dust were moderately high and should not be ignored."); ¶ 65 (EPA officials began to receive data in February 2002 from a scientific group convened by the United States Department of Energy indicating "very fine particulates in the outdoor air higher than those measured at the Kuwaiti oil field fires set during the Gulf War.); ¶ 74 (EPA officials were informed by a United States Geological Survey Team that most of the dust was as alkaline as ammonia and some of the dust was as caustic as liquid drain cleaner.).

-17-

should have been aware of significant information known to her subordinates, but arguably inadequate management of a vast agency of 17,000 employees[2] is not a basis for constitutional tort liability.

The Bivens count, alleging Whitman's personal liability for damages for a denial of substantive due process, must be dismissed.

II. The APA Count

The APA count against the EPA defendants, brought pursuant to sections 706(1) and 706(2) of the APA, seeks injunctive relief and a finding of liability based on two independent claims. The first claim is a substantive due process claim, which mirrors the Plaintiffs' Bivens claim in Count One against Whitman. With the failure of the Bivens claim against Whitman, the first component of the APA claim fails for many of the same reasons. Moreover, to the extent that this component alleges that EPA's failure to act or perceived inadequacies in EPA's response to the disaster constitutes a violation of substantive due process, it is foreclosed by DeShaney, 489 U.S. at 196-97 ("[O]ur cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."), and its progeny, see, e.g., Pena, 432 F.3d at 110 ("A

_____

[2] See http://www.epa.gov/epahome/aboutepa.htm (last visited April 18, 2008).

-18-

failure to interfere when misconduct takes place, and no more, is not sufficient to amount to a state <u>created</u> danger.") (emphasis in original).

The second component of the APA count rests on allegations that EPA failed to fulfill mandatory post-disaster cleanup and public information duties assigned to it in various National Contingency Plan (NCP) regulations (the "non-Constitutional claims"). The Plaintiffs' cross-appeal challenges Judge Batts's ruling as to the non-constitutional claims in the APA Count.

The APA count seeks an order compelling EPA to take certain actions, as follows: first, "to perform representative testing of all office buildings, schools, and residences in Lower Manhattan, including Brooklyn, for any and all hazardous substances, in accordance with applicable federal regulations and standards, and, where such tests reveal the presence of hazardous substances, implement a complete professional clean-up of all such buildings"; and, second, in summary, to "implement a program for medical monitoring services" to detect, diagnose, study, and prevent any conditions caused by exposure to WTC dust. Complaint, Count II, prayers for relief C and D. The Plaintiffs contend that each type of relief may be awarded under either sections 706(1) or 706(2). We will consider each section separately.[3]

---

[3]We need not and do not consider EPA's argument that the Stafford

Section 706(1). Section 706(1) empowers a district court to "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1).  The Plaintiffs do not dispute that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take," Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (emphases in original) ("SUWA").  They contend that the actions EPA allegedly failed to take satisfy the SUWA standard.  We disagree.

In SUWA, the Supreme Court explained that, like the power to grant writs of mandamus, "§ 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.'"  542 U.S. at 64 (quoting Attorney General's Manual on the Administrative Procedure Act 108 (1947) (emphasis in SUWA)).  The Plaintiffs describe the section 706(1) aspect of the APA count as grounded on the allegation "that the EPA failed to follow the NCP, as mandated by 40 C.F.R. § 300.3(d)."  Br. for Appellees at 45.  EPA does not dispute that the NCP was in effect after 9/11, as 40 C.F.R. § 300.3(d) provides, but argues that none of the NCP regulations invoked by the Plaintiffs requires EPA to take discrete actions.  Several sections of Title 40 of the Code of Federal Regulations are at issue, which we consider separately.

---

Act bars judicial review of the Plaintiffs' EPA claims.

Section 300.155 provides: "When an incident occurs, it is imperative to give the public prompt, accurate information on the nature of the incident . . . ." 40 C.F.R. § 300.155(a). Although the Plaintiffs seize on the word "imperative," other language in the regulation listing measures that "should" or "may" be done and phrases like "as appropriate" and "whenever possible" make clear that section 300.155, read as a whole, states what an agency should do, rather than outlining discrete actions that a court may require it to do.

Section 300.170 provides that various agencies, including EPA, "have duties established by statute, executive order, or Presidential directive which may apply to federal response actions following . . . the . . . release of a hazardous substance, pollutant, or contaminant." 40 C.F.R. § 300.170. No part of the regulation requires EPA, or any other agency, to take a discrete action.[4]

---

[4]In connection with their section 300.170 claim, the Plaintiffs endeavor to invoke Presidential Decision Directive, PDD 62, which is classified, based on public statements made by EPA officials about what PDD 62 requires. The Plaintiffs contend that PDD 62 "requires" EPA to take the "lead" on the task of interior building cleanup after a terrorist attack. While the text of PDD 62 is not in the record before us, even if PDD 62 assigns EPA a "lead" cleanup role in the aftermath of terrorist act, that would not amount to a requirement to take a specific discrete action within the meaning of SUWA.

Sections 300.400(g)(4) and 300.5 identify and define "applicable or relevant and appropriate requirements," known as "ARARS," used as cleanup standards under CERCLA. None of these regulations sets forth a "<u>discrete</u> agency action that [EPA] is <u>required to take</u>." <u>SUWA</u>, 542 U.S. at 64 (emphases in original). The Plaintiffs rely on Subpart E of the NCP regulations, the subpart relating to Hazardous Substance Response, <u>see</u> 40 C.F.R. § 300.400. However, another subsection of section 300.400 renders any actions or failures-to-act pursuant to Subpart E discretionary and therefore unreviewable under section 706(1) of the APA:

> Activities by the federal and state governments in implementing this subpart are discretionary governmental functions. This subpart does not create in any private party a right to federal response or enforcement action. This subpart does not create any duty of the federal government to take any response action at any particular time.

<u>Id.</u> § 300.400(i)(3).

Section 415(b)(2) provides a list of factors that "shall be considered in determining the appropriateness of a removal action." 40 C.F.R. § 300.415(b)(2). Acknowledging that EPA was not required to undertake a removal action, the Plaintiffs claim that what was required of EPA was consideration of the subparagraph (b)(2) factors in making the decision for a removal action.

For several reasons, the Plaintiffs can obtain no relief for EPA's alleged failure to consider the listed (b)(2) factors. In the first place, the removal action has occurred, making any requirement to

-22-

consider the listed factors moot. See SUWA, 542 U.S. at 68 (concluding that a claim that the Bureau of Land Management's failure to comply with its statutory mandate in developing land use plans was rendered moot by the completion and implementation of the plan).  Second, such consideration, preparatory to undertaking a removal action, does not appear to meet the statutory definition of "agency action." See 5 U.S.C. § 551(13). Finally, section 300.400(i)(3), which governs the subpart containing subparagraph (b)(2) precludes judicial review.

Section 35.6205(c) provides that "[i]f both the State and EPA agree, a political subdivision with the necessary capabilities and jurisdictional authority may assume the lead responsibility for all, or a portion, of the removal activity at a site". 40 C.F.R. § 35.6205(C).  The Plaintiffs seek to derive from this section a mandatory requirement that EPA determine that a political subdivision has "the necessary capabilities" before permitting it to assume lead responsibility for removal activity, and allege that EPA accorded removal responsibility to New York City without making such a determination.  Although the regulation contemplates some general assessment of a local agency's capability to assume lead responsibility, there is no specification of any discrete action that EPA is required to take, and there is no basis, under SUWA, for a section 706(1) remedy.

Section 300.3(d) provides that the NCP "applies to and is in effect" when a post-disaster Federal Response Plan is activated. 40

-23-

C.F.R. § 300.3(d). The Plaintiffs allege that an EPA official admitted at a public hearing that the agency was not following the NCP with respect to the post 9/11 clean-up, Complaint ¶ 148, but there is no allegation of any failure to carry out a mandatory duty to take a discrete action required by the NCP.

(b) Section 706(2). The Plaintiffs also contend that the APA count may be construed as a section 706(2) challenge to EPA's handling of the post-9/11 cleanup in the WTC area. Section 706(2) provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings and conclusions found to be . . . arbitrary, capricious, an abuse of discretion . . . otherwise not in accordance with law . . .[or] contrary to constitutional right . . . ." 5 U.S.C. § 706(2).

A plaintiff may obtain judicial review of an action taken by an agency only if (1) it constitutes "agency action," id. §§ 702, 704, a term of art defined by the APA, see id. § 551(13), and (2) the action was "final," id. § 704; see, e.g., Bennett v. Spear, 520 U.S. 154, 177-78 (1997). If there is such a "final agency action" presented for review, the intermediate actions leading up to that final action are reviewable as well. See 5 U.S.C. § 704. The Plaintiffs contend that the now-complete post-9/11 cleanup program ultimately fashioned and led by EPA was "final agency action" eligible for judicial review under the APA. EPA responds that a cleanup program is not like "an agency order or rule"--classic examples of final action; a completed program cannot

-24-

be "set aside," which is what section 706(2) directs courts to do in response to valid claims; and, in any event, the only specific relief the Plaintiffs seek is an order directing EPA prospectively to conduct monitoring, testing, and arrange a professional cleanup.

Even if a cleanup program could be considered "final agency action," Plaintiffs' challenge to the clean-up program is rendered moot by the completion of that program. Cf. Fund for Animals, 460 F.3d at 22 (Bureau of Land Management's completed program). A completed cleanup program cannot be effectively remedied under section 706(2) because a court cannot undo a completed program. See id. Second, the specific relief sought here is not available under section 706(2), which empowers a court to "hold unlawful and set aside" an agency action.

In sum, the District Court properly rejected the sufficiency of all aspects of the Plaintiffs' non-constitutional APA claims.

III. The Mandamus Count

The Plaintiffs' claim for mandamus duplicates the APA count, both as to the underlying allegedly mandatory duties and as to the relief sought. Mandamus may be awarded only if the plaintiff proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available. See Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989).

The District Court properly determined that the Plaintiffs have

met none of the criteria for a writ of mandamus.

IV. The CERCLA Count

The CERCLA count is brought pursuant to subsection (1) of CERCLA's citizen-suit provision, which provides:

> [A]ny person may commence a civil action on his own behalf . . . against any person (including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter (including any provision of an agreement under section 9620 of this title, relating to Federal facilities)

42 U.S.C. § 9659(a)(1).

As with their APA claim, the premise of the Plaintiffs' CERCLA claim is that EPA failed to fulfill mandatory duties assigned to it by the NCP, which was promulgated under CERCLA. For this reason, EPA argued, and Judge Batts agreed, that the Plaintiffs were required to file any CERCLA claim under subsection (2), which provides that a person "may" commence an action

> against the President or any other officer of the United States (including the Administrator of the Environmental Protection Agency and the Administrator of the ATSDR) where there is alleged a failure of the President or of such other officer to perform any act or duty under this chapter, including an act or duty under section 9620 of this title (relating to Federal facilities), which is not discretionary with the President or such other officer.

Id. § (a)(2).[5]

_____

[5]The Plaintiffs apparently used subsection (1) rather than subsection (2) because broader relief is available in suits under

-26-

The Supreme Court has provided authoritative guidance that counsels rejection of the Plaintiffs' CERCLA claim by its adjudication of a suit brought under an analogous citizen-suit provision of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(1)(A). See Spear, 520 U.S. at 172-73. The Court held that a claim that the Secretary of the Interior had failed to administer the ESA according to its dictates could not be brought under the subsection of ESA's citizen-suit provision relating to "violation[s]" of the ESA or regulations. 520 U.S. at 173. Instead, the Court held that such a claim could be brought only under the subsection authorizing suit against the Secretary "where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary," 16 U.S.C. § 1540(g)(1)(C). See id.

In the pending case, the District Court correctly ruled that, in view of the similarity between the CERCLA and ESA citizen-suit provisions, the Plaintiffs' CERCLA claim had to be dismissed on the authority of Spear. See Battaglia v. Browner, 963 F. Supp. 689, 691 (N.D. Ill. 1997) (rejecting CERCLA "violation" claim on analogy to Spear and the ESA); cf. Physicians Committee for Responsible Medicine v. Johnson, 436 F.3d 326, 334-35 (2d Cir. 2006) (rejecting, in a suit

---

subsection (1), see 49 U.S.C. § 9659(c), and suits under subsection (2) must be brought in the District Court for the District of Columbia, see id § (b)(2).

-27-

brought pursuant to an analogous citizen-suit provision of the Toxic Substances Control Act, 15 U.S.C. § 2619(a), a maladministration claim against the EPA Administrator styled as a "violation" claim).

## Conclusion

We understand the Plaintiffs' concern, supported in substantial part by the report of the EPA's own Inspector General, that the agency's performance in discharging its responsibilities in the aftermath of the 9/11 attacks, which involved an attack on America's largest city unprecedented in our history, was flawed. But legal remedies are not always available for every instance of arguably deficient governmental performance. For the reasons set forth in this opinion, we reverse the denial of the Defendants' motion to dismiss Count I, reverse that portion of the District Court's order denying the Defendants' motion to dismiss the constitutional APA claim within Count II, and affirm the dismissal of the non-constitutional APA claim within Count II, Count III, and Count IV. Accordingly, the case is remanded with directions to dismiss the Complaint.